(Nos. 53250, 53299 cons

HOMER F. ALTEVOGT *et al.*, Appellants, v. THOMAS BRINKOETTER *et al.* (Thomas B. Brinkoetter, Appellee and Cross-Appellant; John (Sonny) Hinton, Jr., Appellee).

*Opinion filed March 31, 1981.—Rehearing denied June 4, 1981.*

Gary F. Geisler, of Geisler, Waks & Geisler, of Decatur, for appellants Homer F. Altevogt and Sarah M. Altevogt.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (William O. Martin, Jr., of counsel), for appellee and cross-appellant, Thomas B. Brinkoetter.

Rosenberg, Rosenberg, Bickes & Johnson, Chartered, of Decatur (Jeffrey D. Richardson, of counsel), for appellee John (Sonny) Hinton.

Baker & Bellatti, of Springfield (James P. Baker, of counsel), for *amicus curiae* the Homebuilders Association of Illinois.

MR. JUSTICE WARD delivered the opinion of the court:

The plaintiffs, Homer F. Altevogt and Sarah M. Altevogt, filed a complaint in the circuit court of Macon County on July 12, 1978, against Tom Brinkoetter and Company, the Citizens National Bank of Decatur, and John (Sonny) Hinton, Jr., seeking damages of $20,000 for alleged defects in a new house purchased from Tom Brinkoetter and Company and built by Hinton. The complaint was dismissed, as was a first amended com-

plaint, and on March 9, 1979, the plaintiffs filed a second amended complaint which substituted Thomas B. Brinkoetter for Tom Brinkoetter and Company as the defendant from whom the plaintiffs had purchased the property. Motions by each of the four defendants to dismiss the second amended complaint were granted by the circuit court.

The plaintiffs took an appeal to the appellate court from the dismissal of the action as to Thomas B. Brinkoetter and Hinton. The court reversed the judgment and remanded the cause as to Brinkoetter, and affirmed the judgment as to Hinton. (81 Ill. App. 3d 711.) We granted petitions for leave to appeal filed by the plaintiffs and by Brinkoetter under Rule 315(a) (73 Ill. 2d R. 315(a)) and consolidated the appeals. Tom Brinkoetter and Company and the Citizens National Bank of Decatur are not parties to the appeals.

The second amended complaint was in three counts. Count I sought recovery from Brinkoetter for the alleged breach of an implied warranty that the house was fit for habitation. Count II sought recovery from the bank on the same theory. Count III sought recovery from Hinton for breach of a warranty to build the house in a reasonably workmanlike manner. We consider first the action against Brinkoetter.

The complaint alleged that Brinkoetter was the beneficial owner of a lot in Decatur, legal title to which was held by the bank as trustee, and that he contracted with Hinton, on a date not stated in the complaint, to build a house on this lot. It was further alleged that on May 1, 1973, the plaintiffs and Brinkoetter entered into a written contract whereby the latter was to sell the premises to the plaintiffs for the sum of $30,500, which sum had been fully paid. A copy of the contract was attached to the complaint. The premises were conveyed to the plaintiff on June 8.

Count I does not allege that the house was in existence when the contract of sale was executed, nor, on the other hand, does it allege that Brinkoetter promised the plaintiffs to build a house on the lot as part of the transaction. And neither the complaint nor the contract states that the subject of the sale was the lot as improved with a house. The house may have been in the process of construction when the contract was executed, for added to the printed form is a handwritten list of eight items, including the installation of drywall and plumbing fixtures and electrical outlets, which the seller agrees to complete.

Count I is also silent as to when the house was completed. Count III, however, alleges that it was not finished until the last week of July. In answers to interrogatories the plaintiffs stated that they moved into the house on June 23.

Count I enumerates five defects which allegedly rendered the house unfit for habitation. It is alleged that these defects were not known to the plaintiffs and could not reasonably have been discovered at the time of purchase or at the time of completion.

In his motion to dismiss and on this appeal Brinkoetter contends that the action against him was barred by limitations, and that the complaint fails to state a cause of action because it does not allege that he was the builder as well as the vendor of the house. The appellate court considered only the first of these contentions.

The warranty which is the basis of the action against Brinkoetter arose out of the written agreement between Brinkoetter and the plaintiffs (*Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 41). The warranty was not set forth in the contract, however, but was implied by law. The question thus arises as to whether this case is governed by the 10-year period prescribed by section 16 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 17) for actions on a written contract or the five-year

period prescribed by section 15 (Ill. Rev. Stat. 1979, ch. 83, par. 16) for "actions on unwritten contracts, express or implied *** and all civil actions not otherwise provided for."

. Brinkoetter contends that it is section 15 which applies, citing in support of his position *Mowatt v. City of Chicago* (1920), 292 Ill. 578. *Mowatt* did not involve an implied warranty, and it is not controlling here. The question whether an action such as this should be characterized as one on a written contract has not received a uniform answer in the courts of other States. (See Annot., 1 A.L.R.3d 914, 917 (1965).) It need not be resolved here, however, for the plaintiffs agree in their brief that the case should be governed by the five-year period. We therefore proceed on that assumption, as did the appellate court.

The next question for consideration is the date when the five-year period started to run. Brinkoetter contends that it was May 1, 1973, when the contract was executed. The plaintiffs contend that it was the last week of July of that year, *i.e.*, from July 24 to July 31, when construction of the house was completed. The significance of the choice of starting points is that the original complaint was filed on July 12, 1978, whereas the second amended complaint, in which Brinkoetter was first made a defendant, was not filed until March 9, 1979. Measured from the execution of the contract, the original complaint, and thus the second amended complaint, would each have been untimely, but measured from the completion of construction the original complaint, although not the second amended complaint, would have been timely.

The appellate court held that while the warranty arose out of the contract of sale the subject of the warranty was "the condition of the house *at the time it is completed* and the deed has passed." (Emphasis in original.) (81 Ill. App. 3d 711, 713.) That conclusion is consistent with

the characterization of an implied warranty of habitability made in *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 42. *Petersen,* in which the court first recognized the existence of an implied warranty of habitability in the sale of a new home, did not deal with the limitations question, and its facts differed from those of this case in that the property had never been conveyed. As applied to the allegations of the present complaint, however, we consider that the appellate court was correct in holding that no breach of warranty could occur prior to the completion of the house, and that the limitations period accordingly did not begin to run at any earlier point. *Cf. Sponseller v. Meltebeke* (1977), 280 Or. 361, 570 P.2d 974.

Dismissal of a complaint is proper under section 48(1)(e) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(e)) if it appears from the face of the complaint that the action was not commenced within the time limited by law. The appellate court nevertheless did not affirm the judgment of the circuit court but reversed and remanded. Its ground for so doing was that it did not appear from the face of count I of the complaint (the only count directed against Brinkoetter) that the action was barred, since the allegation of the date when construction was completed was made only in count III, which sought relief only against the builder, Hinton. We think that the appellate court erred in thus fragmenting the complaint. The better practice might perhaps have been for Brinkoetter to append to his motion to dismiss an affidavit stating the date when construction was completed. The latter is not controverted by the plaintiffs, however, and a reversal and remand would therefore merely postpone the determination of the case without altering the result, for on the remand Brinkoetter could allege the date in his answer, and move for judgment on the pleadings.

The plaintiffs also maintain that their claim is not

barred for the reason that the addition of Brinkoetter as a defendant in the second amended complaint relates back to the filing of the original complaint by virtue of section 46(4) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 46(4)). Subsection (4) permits relation back only if the plaintiff meets each of five specified conditions. One of the conditions, specified in subsection (4)(c), is that summons was served upon the defendant or his agent. When the original complaint was filed the record shows that summons was served on the registered agent of Tom Brinkoetter and Company and the registered agent of the Citizens National Bank of Decatur. No claim is made that summons was also served on Thomas B. Brinkoetter personally. The plaintiffs argue in their brief that service upon the corporation and the trustee sufficed since each of them should be regarded as the agent of Brinkoetter. Despite the similarity between Brinkoetter's name and that of the corporation, the complaint does not allege that either the corporation or its registered agent was Brinkoetter's agent. The complaint, indeed, does not allege the existence of any relationship whatever between Brinkoetter and the corporation.

So far as service upon the bank is concerned, the provision of subsection (4)(c) relating to service upon a trustee does not apply to every trust but only to a trust whose trustee has "no power of management or control" over the real property constituting the trust. As the historical and practice notes point out, this subsection was aimed at the conventional Illinois land trust where the names of the beneficiaries are not disclosed. (Ill. Ann. Stat., ch. 110, par. 46(4)(c), at 257 (Smith-Hurd 1968).) The complaint contains no allegations that would bring subsection (4)(c) into play.

We therefore conclude that count I was barred by the statute of limitations, and it is unnecessary to decide whether it states a cause of action.

We turn then to the claim against the defendant Hinton asserted by count III. That count alleges Brinkoetter's ownership of the lot, his entry into a contract with Hinton to build a house on it, the purchase of the property by the plaintiffs, and the completion of construction during the last week of July 1973. No copy of a contract between Brinkoetter and Hinton is attached to the complaint, and its terms and date of execution are not alleged, despite section 36 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 36).

Paragraphs 5 and 6 allege as follows:

"5. THAT in contracting to build and in building said residence, Defendant, JOHN (SONNY) HINTON, JR., impliedly warranted that said residence would be constructed in a reasonably workmanlike manner.

6. THAT the Defendant, JOHN (SONNY) HINTON, JR., knew that said residence was not to be inhabited by THOMAS B. BRINKOETTER, but was to be held out for sale to unidentified prospective buyers."

Paragraph 9 alleges that the house was not constructed in a reasonably workmanlike manner by reason of one or more of 13 enumerated defects. These include all of the five defects alleged in count I and eight others. It is alleged that the plaintiffs did not know of and could not reasonably have discovered any of the defects either at the time of the purchase or the time when construction was completed.

The plaintiffs' briefs make it clear that the warranty by Hinton referred to in paragraph 5 is not claimed to have been made to the plaintiffs, but only to Brinkoetter. There is no allegation of any contract or even any negotiations between the plaintiffs and Hinton. The plaintiffs' claim is rather that they are entitled to sue upon the warranty as third parties for whose benefit it was made.

The starting point for analysis of whether count III states a cause of action is the principle that Hinton's liability to the plaintiffs as third parties is limited by the

terms of his obligation to the promisee, Brinkoetter (2 Williston on Contracts sec. 364A (3d ed. 1959); 4 Corbin on Contracts sec. 773 (1951); Restatement (Second) of Contracts sec. 140 (1981)). The appellate court noted this point but did not discuss it.

A contract to construct a building is a contract to render services, and courts applying Illinois law have recognized that such a contract may carry an implied undertaking that the various jobs of which the overall construction is composed will be performed in a reasonably workmanlike manner (*Georgetown Township High School District No. 218 v. Hardy* (1976), 38 Ill. App. 3d 722, 724; *Dean v. Rutherford* (1977), 49 Ill. App. 3d 768, 770; *Economy Fuse & Manufacturing Co. v. Raymond Concrete Pile Co.* (7th Cir. 1940), 111 F.2d 875, 878-79). This undertaking is often spoken of as a "warranty," although the latter term, strictly speaking, is applicable to the sale of property rather than the furnishing of services (*Stewart Warner Corp. v. Burns International Security Services, Inc.* (N.D. Ill. 1972), 343 F. Supp. 953, 954).

Hinton's motion to dismiss asserts that count III should be dismissed for failure to sufficiently allege that the defects complained of resulted from Hinton's failure to perform in a workmanlike manner. While there may be some question on this score, we need not address it, since we agree with the appellate court that the plaintiffs are not intended beneficiaries of the contract.

The parties are in agreement that the general principles in this State on the right of a person not a party to a contract to enforce it are to be found in *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252. In that case a corporation which was engaged in building a new hotel had issued bonds secured by a chattel mortgage on equipment and furnishings to be installed in the hotel. The corporation subsequently encountered financial difficulties, and the

underwriters refused to disburse further funds. Two officers of the corporation then entered into a contract with the underwriters of the bonds, promising that certain equipment and furnishings would be purchased from named vendors and would be installed in the hotel by a date certain, and guaranteeing payment for the merchandise by the corporation. Upon the corporation's default one of the vendors sued the guarantors to recover for merchandise sold and delivered.

The court held that the plaintiff had standing to maintain the action. Since the ultimate purpose of the contracting parties was to protect the underwriters against loss and thereby enable the corporation to finish the hotel and place it in operation, the contention was made that any benefit to the plaintiff was incidental rather than direct, and that the plaintiff was not entitled to sue. The court rejected that contention on the ground that in naming the plaintiff the contract showed an intention to confer a benefit upon it. In the court's view the promisors were not merely insuring that the plaintiff would be compensated for any merchandise which might be bought from it, but were expressing an intention that the merchandise be obtained from that source. See 346 Ill. 252, 265.

While some other jurisdictions might view the matter differently, Illinois, as shown by the *Carson Pirie Scott* decision, holds that a third party is a direct rather than an incidental beneficiary only if the contracting parties have manifested in their contract an intention to confer a benefit upon the third party. As the court stated:

> "The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing can not be extended or enlarged on the ground, alone, that the

situation and circumstances of the parties justify or demand further or other liability. [Citation.]" 346 Ill. 252, 258.

This principle was recently applied in *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381. In that case the Illinois Building Authority, which at the time was not a State agency but an independent public corporation, contracted for architectural and other services in connection with the construction of a building to be leased by the Authority to the State Department of Public Safety for use as a correctional center. The contract made frequent reference to the Department, and directed that the architects consult with it concerning the design of the building.

The court, quoting the same passage from *Carson Pirie Scott* which is given above, held that the State could maintain an action to recover damages for breach of contract as a third-party beneficiary. (See 78 Ill. 2d 381, 384-85.) After noting that there were surrounding circumstances which also showed an intention of the parties to benefit the State, the court added:

"Yet, we repeat that it is the contract which is controlling and is persuasive here; and on that basis we limit our holding: the State is a proper party plaintiff because it is a direct beneficiary clearly identified and intended in the contract before us." 78 Ill. 2d 381, 386-87.

The opinion of the appellate court relies in part on the failure of the complaint to allege that Hinton knew that it was the plaintiffs who would be the purchasers of the house. In this regard the appellate court erred. It is not necessary that a contract for the benefit of a third party identify him by name. The contract may define a third party by description of a class, and it is sufficient if the plaintiff may be identified at the time performance is due as a member of the class intended

to be benefited. Restatement (Second) of Contracts sec. 139 (1981); 4 Corbin, Contracts sec. 781 (1951); 2 Williston, Contracts sec. 356A (3d ed. 1959).

In the construction of a single building designed for some particular purchaser, as was the case in *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.*, the contract with the builder might well identify the third-party beneficiary by name. On the other hand, a developer who has contracted with a builder to construct houses in a subdivision for sale to members of the general public and who desires to confer upon some as yet unknown purchaser a right to satisfactory performance by the builder is not likely to refer to the purchaser by name.

It remains true, nevertheless, that if the purchaser predicates his suit upon his status as a third-party beneficiary of the contract, he must allege facts which show an intent on the part of the developer to confer the benefit, which normally would be expressed in the agreement between the promisor and promisee. Here the contract is not a part of the record, nor does the complaint allege that under the contract the parties intended to benefit a third person. That requirement is of particular importance in this case, where the plaintiffs would impose upon Hinton a contractual liability which is broader than that asserted against Brinkoetter, who was charged only with having sold the plaintiffs a house whose defects rendered it uninhabitable.

The plaintiffs point to the allegation of paragraph 6 that Hinton "knew" that the house was not to be occupied by Brinkoetter but would be offered for sale to other persons. We note initially the absence of any allegation that Brinkoetter had informed Hinton that such was his intention prior to the execution of the contract. Apart from that consideration, we do not believe that Hinton's knowledge that a third party would occupy the house establishes that the plaintiffs were direct beneficiaries.

A similar contention was rejected in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 60. There the court declined to expand the third-party beneficiary doctrine so as to permit the purchasers of an improved lot to recover damages from a surveyor who had prepared, at the request of the prior owner, a survey, which was in fact inaccurate, even though the surveyor knew that the plat would be relied on by others, including the plaintiffs (43 Ill. 2d 54, 67). Recovery was sought in *Rozny* on the basis of an express warranty; the holding there would *a fortiori* control where only an implied warranty is claimed.

The plaintiffs cite *Stotlar v. Hester* (1978), 92 N.M. 26, 582 P.2d 403, in support of their position. In *Stotlar* the purchasers of real estate sought damages from an appraiser, employed by the vendors, who had furnished the latter with an inaccurate appraisal on which the purchasers' offering price was based. The court held that the purchasers would qualify as third-party beneficiaries if the purpose of the appraisal was to enable the purchasers to obtain financing which would permit the vendors to receive a price high enough to cover the cost of a replacement home. (See 92 N.M. 26, 30-31, 582 P.2d 403, 407-08.) No comparable state of affairs is alleged in the present complaint.

In *Gilbert Financial Corp. v. Steelform Contracting Co.* (1978), 82 Cal. App. 3d 65, 145 Cal. Rptr. 448, also cited by the plaintiffs, the plaintiff had entered into a contract with a general contractor to construct a building on his land, and the defendant was a subcontractor who had been engaged by the general contractor to install the roof. The court held that the plaintiff could recover damages for defects in the roof as the third-party beneficiary of an implied warranty of workmanship made by the defendant to the general contractor.

The decision in *Gilbert* is contrary to the position taken in section 133 of the Restatement (Second) of Con-

tracts (1981), which defines an "intended" beneficiary (corresponding to what is called a "direct" beneficiary in *Carson Pirie Scott*) and an incidental beneficiary. Illustration 18 to section 133 is as follows:

"A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building."
See also 4 Corbin, Contracts sec. 779D, at 46-47 (1951).

*Gilbert*, in any event, does not involve the situation here, where the plaintiffs are not the owners who contracted for the construction of the building, but subsequent purchasers. In that situation our decision in *Rozny v. Marnul* remains applicable, and the plaintiffs accordingly may not maintain an action against Hinton as direct beneficiaries.

For the reasons given in this opinion we reverse the judgment of the appellate court and affirm that of the circuit court with respect to the claim against the defendant Brinkoetter asserted by count I of the complaint. As to the claim against the defendant Hinton asserted by count III we affirm the judgment of the appellate court.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.