(No. 95-CC-0594

SHARON FARRELL, WENDELL LAWSON, JOSEPH MCCULLOUGH, MARSHA MCCULLOUGH, THOMAS MUMMEY, EVELYN DUBREE, DIXIE MILLER and KARLA SMITH, Individually, and on behalf of a class of employees of Wittek Industries, Inc. from 1990-1994, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion on motion to dismiss filed May 7, 1997.*

*Supplemental opinion on denial of rehearing filed September 4, 1997.*

*Order filed January 10, 2000.*

GEORGE C. HOOK, P.C., for Claimants.

JIM E. RYAN, Attorney General (EDWIN L. DURHAM, Assistant Attorney General, of counsel), for Respondent.

## OPINION ON MOTION TO DISMISS

EPSTEIN, J.

Eight Claimants bring two claims against the State (counts I-II) on behalf of themselves and a purported class of 700+ former employees of Wittek Industries, Inc. ("Wittek"), which operated in Galesburg, Illinois, and two claims (counts III-IV) on behalf of themselves and a purported sub-class of 139 of the former Wittek employees who were the subject of an enforcement action against Wittek by Respondent's Department of Labor ("IDOL").

Count I alleges that the Respondent breached certain contracts between Wittek and the Respondent's Department of Commerce and Community Affairs ("DCCA"), which Claimants seek to enforce as third-party beneficiaries. Count II asserts the intentional torts of interference with contract and with prospective economic advantage, alleging that the Respondent interfered with Claimants' current and prospective employment with Wittek. Count III asserts state and federal statutory violations, alleging that IDOL misused and appropriated the Claimants' social security numbers and other information. Count IV asserts invasions of privacy by IDOL.

These four putative class claims, seeking $70,000,000 plus in damages ($100,000 per Claimant) on counts I and II and unspecified damages on counts III and IV, are before us on two threshold motions that were fully briefed and orally argued to the Court: (1) the Claimants' motion for certification of the class and sub-class pursuant to section 2—802 of the Code of Civil Procedure, which *inter*

*alia* has provoked a challenge by the Respondent to this Court's jurisdiction to entertain class actions; and (2) the legal issues raised by the Respondent's motion for summary judgment on all four counts, which the Court has taken solely as a section 2—615 motion to dismiss based on the allegations of the complaint and the DCCA-Wittek contract documents that were produced by the Respondent pursuant to the Court's order of November 19, 1996.

## Procedural Posture of the Case

The Court has determined, unusually, to take up only some of the issues, i.e., the facial legal issues, that are raised in the Respondent's summary judgment motion. We adhere to our refusal to consider, at this point, the fact-based defenses that were raised in the pending motion, despite the Respondent's persistent efforts to renew those arguments at this stage of the case.

The Court will proceed step-wise in this case. The legal issues raised that can be adjudicated on the face of the complaint and on the contract document record should be decided expeditiously.[1] There is no reason to delay resolution of those threshold issues.

However, the same cannot be said of the fact-sensitive issues raised in the Respondent's summary judgment

---

[1] The contract record before us, consisting of nine compiled volumes of documentation, was filed by the Respondent only as a result of the Court's insistence (order of November 26, 1996) in the face of the Respondent's foot dragging and the Claimants' cavalierly passive discovery efforts. We have been tolerant of the Claimants, who recognized that their contract complaint was defective for omitting the contract documents (*see* complaint, paragraph 6). Because of the magnitude and urgency of these claims, as well as the complexity of the contracts, and with the objective of getting to the core of these disputes, we ordered full and prompt production and have allowed the Respondent's document production to satisfy what is ordinarily a claimant's pleading burden. This does not, however, signal acceptance of the Claimants' allegation that the Wittek-DCCA contract documents were unavailable to them and must be obtained from the Respondent (complaint, paragraph 6), given that Claimants' counsel was formerly counsel to Wittek.

motion. We will not now take up the Respondent's contention that it did not (and that Wittek did) breach the grant agreements on which counts I and II are predicated. We defer consideration of such issues because of the large and burdensome factual record that is required to adjudicate the issues of compliance, entitlement, interference and breach relating to the DCCA-Wittek agreements and because of the incompleteness of the extensive discovery requested by the Claimants. Those defenses may or may not ever be determinable by summary judgment rather than trial. But they surely are not determinable now or any time soon, and not before completion of a discovery process between these parties that promises to be protracted and contentious. The fact-based issues can be taken up later if necessary.

On the class issues, the Court directed that a hearing be conducted on the fact-related aspects of the certification issues under section 8—204 of the Code of Civil Procedure (735 ILCS 5/8—204). We also directed the parties to submit their suggestions for management of the classes, particularly the notice mechanics, in the event the Court did assert jurisdiction and certify one or more Claimant classes. For reasons inadequately explained, neither party addressed those issues beyond the initial pleadings and motions.

### The Class Action Issues

Respondent vigorously opposes the class certification motion, and contends that the Court of Claims lacks jurisdiction to entertain a class action. Claimant asserts that this Court has the authority to entertain class actions by virtue of the class action provisions of the Code of Civil Procedure (part 8 of article II; 735 ILCS 5/2—801 *et seq.*). The Code, like the rules of the Illinois Supreme Court, has been adopted by this Court "[E]xcept as

herein otherwise provided by" this Court's rules. Regulation 790.30 "Pleadings and Practice," 74 Ill. Admin. Code, section 790.30.

Neither party has found, nor has our research, any decision of this Court or of the constitutional courts of Illinois that directly addresses or decides this jurisdictional issue. In this sense, this is an issue of first impression.

On the other hand, in at least one case this Court did entertain a class action and did adjudicate issues on behalf of a claimant class. (*Gendel v. State* (1984), 38 Ill. Ct. Cl. 76.) (Roe, C.J.).) However, in *Gendel*, the court's opinion assumed rather than decided the class jurisdiction issue. Chief Justice Roe's opinion applied the Code class provisions without any discussion of their vitality in the Court of Claims. There is no indication that any party in *Gendel* raised any jurisdictional issue. *Gendel* is thus of limited precedental guidance.

The other "class actions" that the Claimants cite as class precedents in this Court were not true class adjudications. Those cases were examples of class awards or joint awards entered by this Court on stipulations or following class judgments or class settlements in other courts, *e.g.*, *Peltz v. State* (1981), 34 Ill. Ct. Cl. 284; *Acoff v. State* (1981), 35 Ill. Ct. Cl. 364; *Coppetelli v. State* (1981), 35 Ill. Ct. Cl. 328.

In light of the unsettled status of this class jurisdiction question, and in light of our disposition of the complaint at this stage of this case, the Court declines to reach the class action issues at this time as it is unnecessary to do so. We will return to this briefed and argued issue when and if we are required to do so in the course of future proceedings.

## Count I
### Breach of Contract—Third Party Beneficiary

Claimants' breach of contract theory in count I of their complaint is predicated on a series of "promises" that the Respondent, through DCCA, made to Wittek in its "Incentive Letter" of November 1990 (and earlier versions of that letter, and in ensuing grant contracts) to provide $1,000,000 to Wittek as a training grant for use in training Wittek employees in Illinois and to provide a $2,000,000 grant to Wittek for "acquisition of machinery, equipment, improvements and" moving expenses. These "promises" were undisputedly made by DCCA in order to induce Wittek to consolidate its manufacturing operations in Illinois, specifically in Galesburg, which it ultimately did and where it ultimately failed and went out of business.

Claimants allege that the Respondent breached the Wittek-DCCA agreements by both tardy and short payments of the "promised" grant funds. The Claimants further allege that the Respondent's failure timely to provide the full "promised" $3,000,000 "caused" enormous damages (complaint, pars. 8, 13):

"8. As a result of the failure to provide all funding and the substantial delay in * * * Wittek experienced a severe cash flow crunch, was forced to lay off workers, thereby losing the training that they had received, and became prey to the predations of a cabal of community leaders, key employees and their financial backers, who attempted to put Wittek into bankruptcy and out of business. Eventually, as a result of the State's niggardliness, in breach of its contracts with Wittek, it was forced out of business.

* * *

13. As a consequence of the State's breaches of its contracts with Wittek, the Claimants lost training benefits and steady jobs as well as credit and respect in their community and housing, suffering repossession of their goods, eviction from their apartments, foreclosure of their homes, other dispossessions, bankruptcy, divorce, delinquency, social stigmatization, medical problems, affronts to their human dignity, and other depredations which have devastated them economically, emotionally, psychologically and socially, all to their damage far in excess of the $100,000 per Claimant to which the State limits them under the Court of Claims Act."

Claimants seek to enforce the DCCA-Wittek contracts, and seek compensatory redress for those allegedly (in part) consequential injuries and damages, on a third-party beneficiary theory, alleging (complaint, par. 12):

"12. When the State entered into the ° ° ° contracts with Wittek it intended the Claimants to benefit from the contracts with Wittek by providing them with training and jobs from a stable company made so, in large part, by funds provided by the State."

The Respondents attack Claimants' claim to third-party beneficiary status with respect to the DCCA-Wittek contracts. Respondent contends that the Wittek employees in Galesburg or elsewhere in Illinois (seemingly including prospective employees as of the time of the "promises" by DCCA) were at best incidental rather than direct intended beneficiaries of the agreements with DCCA and thus cannot, under Illinois law, claim third-party beneficiary status to enforce the DCCA-Wittek contracts. Respondent advances this contention as to the "Inducement Letter," which was the core agreement, as well as to the subsequent training grant agreement (the "Industrial Training Program Agreement" or "ITP Agreement") and the "Modern Assessment Grant" and the modernization and retooling grant under the "Build Illinois Program" administered by DCCA.

The Claimants argue vigorously that they were specifically intended to benefit from the contracts, particularly the job training grant funds, and are thus as a group within the ambit of the intended beneficiaries who can enforce these agreements.

The Illinois contract law of third-party beneficiaries is settled and clear, although not always so easy of application. As Justice Rizzi of the First District Appellate Court so succinctly stated recently:

"There are two types of third party beneficiaries. There are intended beneficiaries and incidental beneficiaries. An intended beneficiary is intended by the two parties to the contract to receive a benefit for the performance of the agreement.

* * *

Only an intended beneficiary has rights under a third party beneficiary contract. An incidental beneficiary has no rights under a third party beneficiary contract. *B.C. v. J.C. Penney Co.* (1990), 205 Ill. App. 3d 5, 15, 150 Ill. Dec. 3, 9, 562 N.E.2d 533, 539." *MDB Enterprises, Inc. v. American National Bank of Chicago* (1st Dist. 1995), 275 Ill. App. 3d 164, 655 N.E.2d 1061, 1064, 211 Ill. Dec. 678, 681.

This Court has recognized and applied the settled distinction between intended/direct beneficiaries and incidental beneficiaries many times. In *Paul-Mar Steel Corp. v. State* (1991), 44 Ill. Ct. Cl. 13, 16, this Court held:

"The general rule with respect to third-party beneficiary actions in Illinois is well-settled. If a contract is entered into for a direct benefit of a third person, not a party to the contract, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct or incidental. As long as the benefit is direct, that individual may sue on the contract."

More recently, in *Sargent & Lundy v. State* (1996), 48 Ill. Ct. Cl. 333, this Court held:

"Under Illinois law, there is a strong presumption against creating rights in a third-party beneficiary. *Midwest Concrete Products Co. v. LaSalle National Bank* (1981), 94 Ill. App. 3d 394. To overcome this presumption, the intent to benefit a third party must affirmatively appear from the language of the instrument and the circumstances surrounding the parties at the time of its execution. *Bates & Rogers Construction Corp. v. Greely & Hansen* (1985), 109 Ill. 2d 225. The [Supreme] court in *Bates & Rogers, supra,* stated:

'Only third parties who are direct beneficiaries have rights under a contract. It is not enough that the third party will reap incidental benefits from the contract. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. A third party is a direct beneficiary when the contracting parties have manifested an intent to confer a benefit upon the third party.'"

The Illinois law of third-party beneficiary status was largely settled in our Supreme Court's 1931 decision in *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 258, 178 N.E. 498. In *Popp v. Dyslin* (2d Dist. 1986), 149 Ill. App. 3d 956, 500 N.E.2d 1039, 1043-44, 102 Ill. Dec. 938, 942-943, the Appellate Court summarized this point as follows:

"The law of Illinois is that a third party is a direct rather than an incidental beneficiary only if the contracting parties have manifested in their contract

an intention to confer a benefit upon the third party. *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 54, 51 Ill. Dec. 674, 421 N.E.2d 182; *Midwest Concrete Products Co. v. LaSalle National Bank* (1981), 94 Ill. App. 3d 394, 396-97, 49 Ill. Dec. 968, 418 N.E.2d 988.

> 'The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability of the promisor must affirmatively appear from the language of the instrument * * * The liability so appearing cannot be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability.' *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 258, 178 N.E. 498.

> ⁂

> * * * However, it is not enough that the parties to the contract know, expect or even intend that others will benefit. The contract must be undertaken for plaintiff's direct benefit, and the contract itself must affirmatively make this intention clear." *Waterford Condominium Association v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 373, 60 Ill. Dec. 110, 432 N.E.2d 1009.

Similarly, the dispositive Illinois case law has been more comprehensively but tersely summarized by Justice Scariano in *B.C. v. J.C. Penney Co., Inc.* (1st Dist. 1990), 205 Ill. App. 3d 5, 150 Ill. Dec. 3, 9-10, 562 N.E.2d 533, 539-540:

> "A third party acquires no rights to damages arising from the breach of a contract entered into by others unless the agreed-to provision at issue was intentionally included for the direct benefit of the third party. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 51 Ill. Dec. 674, 421 N.E.2d 182; *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498; *Wheeling Trust & Savings Bank v. Tremco, Inc.* (1987), 153 Ill. App. 3d 106.) This intent 'must affirmatively appear from the language of the instrument when properly interpreted and construed.' (*Parrett*, 346 Ill. at 257-8, 178 N.E. at 501.) It is not necessary that the contract specifically name a third-party beneficiary if it adequately defines a class of individual beneficiaries. (*Altevogt*, 85 Ill. 2d at 55, 51 Ill. Dec. at 679, 421 N.E.2d at 187.) However, there is a strong presumption that the parties to a contract have not acted for the benefit of anyone other than themselves, and this presumption can be overcome only by language '"so strong as to amount practically to an express declaration."'" *People ex rel. Harrtigan v. Community Hospital* (1989), 189 Ill. App. 3d 206, 218, 136 Ill. Dec. 702, 709, 545 N.E.2d 226, 233 (quoting *Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 86 Ill. Dec. 760, 475 N.E.2d 1327); see also 17 Am. Jur. 2d *Contracts* §304, at 730 (1964).

Applying these principles and rules to the Claimants' allegations and to the contracts in this case, and after detailed, painstaking review of all of the contract documents,

the Court agrees with the Respondent and concludes that the Claimants (and their putative class) as Wittek employees were but incidental beneficiaries who cannot, as a matter of law, enforce the DCCA-Wittek agreements.

First, we fail to find any expression of intent to benefit these employees or any actual or future Illinois or Galesburg employees, individually as a group. Second, we also fail to find in any of the contract documents any indication whatever of an intent to provide funds to assure permanent or stable jobs to those hired by Wittek or to provide State funds to "stabilize" Wittek, as Claimants have alleged. The Court notes that Claimants did not identify any specific language in any of the contract documents that might provide the nexus to the Wittek employees as intended or direct beneficiaries.

The manifested intent of these agreements was to benefit Wittek by offsetting and subsidizing the costs of moving facilities and operations to Illinois and the expenses of consolidating its Illinois operations in Galesburg. The agreements reflect a general purpose of benefitting the Illinois economy and taxpayers and the Galesburg and larger Knox County economies and taxpayers, as well as all of the people in that region of the State, including Wittek employees and providers and their employees and providers. That, however, falls short of direct or intended benefits within the meaning of the rule.

The strongest argument advanced by Claimants, plainly, is the $1,000,000 of job training funding, as that contractual undertaking necessarily and predictably would benefit those receiving the training. But even there, the contract documents make it clear that it is Wittek and the Illinois economy that are the direct and intended beneficiaries, and the employees of Wittek just like the owners of the local businesses in and around

Galesburg were incidental beneficiaries who would reap the economic spinoffs and ripples of the Wittek move to Galesburg.

Because this conclusion turns primarily on the contract language, which is before us in undisputed and complete and immutable form, we must dismiss count I with prejudice.

## Count II
### Interference with Contract and Prospective Advantage

In their count II claim, the Claimants allege that State officials for political and malicious motives, intentionally "interfered" with the Claimants' "valid and sustainable employment relationship" with Wittek (complaint, par. 14), as well as with their "reasonable expectation that they would receive training." (Complaint, par. 15.) Claimants allege that the "interference" consisted of "by late funding" of the Wittek-DCCA grant agreements (complaint, par. 16) and by "not funding at all training and other obligations." (*ibid.*) Claimants assert malice in that various State officials, from the Governor down are alleged to have "determined for political reasons to disavow the Build Illinois Program and other similar programs created by the previous [State administration]" (complaint, par. 18) and that unnamed DCCA officials allegedly had a "animosity toward * * * a former DCCA executive [who] was an executive * * * of Wittek." (Complaint, par. 19.) And again, in somewhat conclusory language, Claimants ascribe their loss of employment and loss of training and other consequential injuries to the "interfering" failure to fund the promised grants.

This count does not require extensive analysis or comment. The Respondent attacks this count primarily on the "malice" and "intentional interference" elements of these two similar torts, and to a lesser extent on the

causation element. The Court has a number of fundamental problems with count II as pleaded.

First, there is a glaring gap between the allegations of "failure" to meet contractual obligations and failure to meet "reasonable expectations" on the one hand, and actual acts of interference with (1) the employment contract, even at-will employment or with (2) the Claimants' "legitimate expectancy" of a future business or contractual relationship. We find that the complaint fails to allege an actual interference, intentional or otherwise, and fails to allege facts that could constitute such an interference.

Second, there is a serious omission of factual allegations supporting all of the elements of these torts. Any claim of interference with existing contractual relations or with future expectancies of any kind must be actual factual allegations. Here we find conclusions, which are simply inadequate as a matter of pleading, and as a matter of fairness to the Respondent so it can know what to defend. If the Claimants mean to allege that DCCA or State officials interfered with their expectancies by taking actions that prevented Wittek from employing them, or prevented them from working for Wittek, they have not done so. There must be a factual allegation of affirmative intentional acts.

We need not further discuss this claim, as it is clearly not well pleaded. However, we cannot say as Respondent would have us do, that this claim is so fundamentally defective that it must be dismissed with prejudice. Existing employment contracts, even at-will relations, are susceptible to tortious interference claims in suitable circumstances. We cannot say at this point whether these Claimants' employment relations with Wittek, or their future employment expectations are or are not subject to such claims; we are short of confronting that issue in this case.

Accordingly, we will allow Claimants to replead count II, if they wish to do so, but we will direct that any repleading of the intentional torts of "interference with contract" and "interference with prospective advantage" or with any future business expectancy be *separately* pleaded in distinct counts.

## Count III
## Misuse of Social Security Numbers

In their count III, Claimants assert that the IDOL wrongfully brought an enforcement action against Wittek and its owner on behalf of (or for the benefit of) the Claimants but without their consent. That underlying allegation, however, is seemingly not the asserted basis of liability under count III. The factual liability basis alleged by Claimants in count III is that the IDOL "took" their private information, particularly Claimants' social security numbers, and wrongfully "published" and disclosed them in the complaint filed in the Circuit Court in the enforcement action brought by IDOL (by its director) against Wittek and its owner, Carmen Viana. *Chun v. Wittek Industries, Inc.*, No. 93-L-95 (Cir. Ct. Knox County, Ill.

Count III asserts that this disclosure violated three statutes: 42 U.S.C. section 405(vii)(I), 26 U.S.C. section 7213(a), and 625 ILCS 5/2—123(h). Complaint, pars. 30, 31, 33, 34, 35.

Insofar as count III asserts a violation of 42 United States Code section 405(vii)(I), a provision of the Social Security Act, or 26 U.S.C. section 7213(a), a provision of the Internal Revenue Code, or both, this Court lacks subject matter jurisdiction to entertain such claim(s). The jurisdiction of this Court does not extend to federal claims, nor encompass federal law. Our jurisdiction is established by section 8 of the Court of Claims Act (705 ILCS 505/8),

with little supplementation by other statutes, and simply does not include federal law violations. The claim for violation of the federal statute must be dismissed with prejudice for want of jurisdiction.

Insofar as count III asserts a violation of section 2—123(h) of the Illinois Vehicle Code (625 ILCS 5/2—123(h)), this Court has jurisdiction and must entertain the claim.

However, it is immediately apparent from even a cursory reading of section 2—123(h) of the Vehicle Code that that section—which does prohibit certain disclosures of social security numbers—applies *only* to the "Secretary." In that Act, the "Secretary" is defined to mean the Secretary of State of Illinois (625 ILCS 5/1—183), who is thus the sole target of section 2—123(h). The Secretary of State is not the IDOL. And the IDOL, at last glance, was not under the Secretary's jurisdiction or supervision. This statute clearly and glaringly has no applicability to the IDOL or to the facts alleged in this case.

Count III will accordingly be dismissed with prejudice.

### Count IV
### Invasion of Privacy

Count IV alleges a series of acts by IDOL that are characterized by Claimants' complaint as being wrongful and as being "unauthorized" and as "invasions of privacy." Although it is far from clear, count IV seems to claim or to assume, vaguely, that the IDOL's enforcement action in the circuit court required the prior consent of the Claimant-employees, which was not only not given, but was allegedly denied affirmatively by the Claimants to IDOL representatives.

Without detailing the arguments of the Respondent, it suffices to note that insofar as count IV is, or may be, predicated on a requirement of consent by Illinois employees such as the Claimants to enforcement actions against their employer by the IDOL, the Court is unaware of any such requirement, and Claimants have utterly failed to point to one in the statutes or common law of this state. The Respondent asserts, and we do not doubt, that at least generally under the applicable statutes, the IDOL asserts *public* not private rights in seeking enforcement of Illinois labor laws, such as the Minimum Wage Law, the Wage Payment and Collection Act and other wage and hour and terms of employment statutes, and are statutorily empowered to do so in their own prosecutorial and enforcement discretion. (*See, e.g.*, 820 ILCS 105/7; 820 ILCS 115/11(c); *see also, People ex rel. Martin v. Smith* (4th Dist. 1990), 205 Ill. App. 3d 553, 563 N.E.2d 1170, 1174; *People ex rel. Martin v. Lipkowitz* (3d Dist. 1992), 225 Ill. App. 3d 980, 589 N.E.2d 182, 184.) Insofar as count IV is based on a theory of a right of the employee-Claimants to veto the IDOL's enforcement action against Wittek, it must be dismissed for failure to state a cause of action.

However, the remainder of the vague and rambling allegations of count IV, including its "invasion of privacy" allegations—which are based, like count III, on the disclosure by the IDOL and the Attorney General of the Claimants' social security numbers in the circuit court complaint against Wittek—may stand on a different footing. The problem for this complaint in this regard is that one cannot determine what footing is being asserted. It is also difficult to determine from the complaint whether or not a distinct "invasion of privacy" claim is sought to be pleaded in count IV, apart from the "unauthorized filing" claim which we have dismissed, in light of the similar claim that

was asserted in count III. We will give the Claimants the benefit of the rather serious doubt, and allow them to try another time to plead an invasion of privacy claim in an amended count IV if they choose to do so.

In light of this disposition of count IV, we need not and thus will not reach the public official immunity defense to count IV that was asserted by the Respondent in its brief.

### Order

For the reasons set forth above, it is now ordered:

1. Respondent's motion for summary judgment, taken as a section 2—615 motion to dismiss counts I-IV of the complaint, is granted as to counts I and III, and granted in part and denied in part as to counts II and IV, as follows:

2. Count I is dismissed with prejudice for failure to state a cause of action;

3. Count II is stricken; and Claimants are granted leave to file an amended count IIA to assert a tortious interference with contract claim, and an amended count IIB to assert a tortious interference with prospective advantage claim, within 35 days after the date of this order;

4. Count III is dismissed with prejudice for want of jurisdiction on the federal claims and for failure to state a cause of action as to the state statutory claim;

5. Count IV is dismissed with prejudice as to claims of unauthorized prosecution by the IDOL of the action against Wittek Industries, Inc. and is otherwise stricken; and Claimants are granted leave to file an amended count IV to assert invasion of privacy claims within 35 days after the date of this order;

6. The Claimants' motion for class certification, the Respondent's attack on class jurisdiction, and the remainder of the Respondent's summary judgment motion that was not considered are continued generally subject to further order of the Court.

## SUPPLEMENTAL OPINION
## ON DENIAL OF REHEARING

EPSTEIN, J.

Claimants now petition us to reconsider the dismissal of their four-count complaint. The Respondent says that no new arguments are advanced in Claimants' petition for rehearing. We agree as to counts II and IV, which in any event have been abandoned by Claimants' filing of an amended complaint on those claims. However, as to counts I and III, the Claimants advance new authority and novel new arguments that deserve review.

### Count I: Third-Party Beneficiary Status

To resurrect their claim to third-party beneficiary status, Claimants cite *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918, 36 Ill. Dec. 338, which they say upheld third-party beneficiary status in an analogous "training funds and programs" situation (Petition for Rehearing, par. 4 at 2). *Resnik*, however, involved a prison construction contract that is not remotely analogous to the instant grant/training contracts.

On the other hand, in *Resnik*, the Supreme Court applied the same *Parrett* standard for determining third-party beneficiary status that this Court applied in this case. In both cases, the contract language was dispositive. But the *Resnik* contract led to the opposite result because its language "specifically and * * * convincingly

display[ed] the intent * * * to make the * * * [third party] a direct beneficiary," (400 N.E.2d at 920, 36 Ill. Dec. at 340) unlike the contract language in this case. *Resnik* is plainly not a basis for reconsideration.

Claimants boldly request a trial on this issue nonetheless, urging that "the surrounding circumstances would conclusively establish that they were intended beneficiaries." (Petition for Rehearing, paragraph 10, at 3) Claimants do not claim they were intended *direct* beneficiaries, as required. But we do not reject their baseless trial plea for this inadequacy alone.

We recognize that under *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257-258, 78 N.E. 498, 501, and its progeny, evidence of "the contract *and* the circumstances surrounding the parties at the time of its execution" (emphasis added) is admissible to glean the parties' intention as to third-party beneficiaries (*i.e.*, whether a direct benefit was intended to be conferred on the nonparty), although the contract language is the primary determinant. Claimants' plea for a trial on this issue, however, is unsupported by any pleaded or proffered allegations of such circumstances. There is no basis for a trial.

### Count III: Misuse of Social Security Numbers

Claimants now "clarify" their count III claim, which seeks damages for the disclosure of their individual social security numbers by the Department of Labor (IDOL) in a circuit court complaint in which the IDOL sought to enforce Illinois wage and hour laws against Claimants' former employer. Count III was and is based on both federal and state statute (42 U.S.C. 405 and 26 U.S.C. 7213 [criminal statutes] and 625 ILCS 5/2—123(h) [section 2—123(h) of the Illinois Vehicle Code]). Now saying that they do "not directly rely on the [federal statutes],"

Claimants contend that count III asserts "an implied statutory tort based on the federal statutes and State non-disclosure policy." Petition for Rehearing, paragraph 20, at 7.

Raising an issue of first impression in this Court, Claimants ask us to recognize an implied statutory tort—*i.e.*, a private civil action implied from a statute that does not expressly create a private cause of action—emanating from a mix of federal and state statutes. Claimants invoke the "5-factor" standard for implied statutory torts established in *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 378, 432 N.E.2d 849, 59 Ill. Dec. 905 (recognizing implied private action for violation of the Real Estate Brokers and Salesmen License Act).[1]

We must reject this creative but wildly contrived effort to weave a cause of action out of fragments of federal and state statute.

First, this Court cannot predicate a claim on federal law, as we lack jurisdiction over federal claims. We cannot manufacture such jurisdiction by creating a state action implied partly from federal statute. We will not engage in such jurisdictional and intellectual bootstrapping.

Second, the *Sawyer* factors do not support an implied tort under section 2—123(h) of the Vehicle Code.

---

[1] Claimants also cite *Heimgaertner v. Benjamin Electric Mfg. Co.* (1955), 6 Ill. 2d 152, 128 N.E.2d 691 (recognizing implied private action against employer under Election Code time-off-to-vote provision); *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1967), 38 Ill. 2d 31, 230 N.E.2d 173 (recognizing implied private action under Federal Safety Appliance Act). Claimants do *not* cite other prominent pre-*Sawyer* implied tort decisions: *e.g., Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 478, 384 N.E.2d 348, 23 Ill. Dec. 554 (recognizing retaliatory discharge tort implied by the Worker's Compensation Act); *Hoover v. May Dept. Stores* (1979), 77 Ill. 2d 93, 395 N.E.2d 541, 32 Ill. Dec. 311 (rejecting implied private action under the 1957 Retail Installment Sales Act); *Teale v. Sears, Roebuck & Co.* (1976), 66 Ill. 2d 1, 359 N.E.2d 473, 3 Ill. Dec. 834 (rejecting implied private action under the age discrimination act and Missouri statute).

To the contrary, *Sawyer* and its progeny lead to the opposite conclusion.

We observe initially that the *Sawyer* factors are customarily stated as four, not five, factors. Claimants add a generic "public policy of the statute" factor, which does not reflect the post-*Sawyer* formulations and seemingly adds nothing of substance to the four *Sawyer* factors.[2]

As our Supreme Court summarized the *Sawyer* factors in *Corgan v. Muehling* (1991), 143 Ill. 2d 296, 574 N.E.2d 602, 609, 158 Ill. Dec. 489, 496 (finding private action implied by the Psychologist Registration Act), which it more recently excerpted in *Rogers v. St. Mary's Hospital of Decatur* (1992), 149 Ill. 2d 302, 597 N.E.2d 616, 173 Ill. Dec. 642 (recognizing implied private action under the X-Ray Retention Act):

> "Implication of a private right of action is appropriate only if: (1) plaintiff is a member of the class for whose benefit the Act was enacted; (2) it is consistent with the underlying purposes of the Act; (3) plaintiff's injury is one the Act was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the Act." See *Sawyer Realty Group, Inc. v. Jarvis Corp.*, cite omitted.

Although the Supreme Court has reminded us that *Sawyer* "did not establish a rigid formula" and that its factors are not necessarily exclusive, *Board of Ed. of City of Chicago, v. A, C and S, Inc.* (1989), 131 Ill. 2d 428, 546 N.E.2d 580, 600, 137 Ill. Dec. 635, 655 (rejecting implied private action under Illinois Asbestos Abatement Act), the four-pronged *Sawyer* test remains the primary analysis for Illinois implied statutory torts.

---

[2] This fifth factor was arguably stated in one pre-*Sawyer* opinion: In *Sherman v. Field Clinic* (1st Dist. 1979), 74 Ill. App. 3d 21, 392 N.E.2d 154, 161, 29 Ill. Dec. 597, 604 (recognizing implied private action under the Collection Agency Act), the court observed that the allegations "contravene the public policy of this State, as expressed in the ° ° ° Act." However, that only says that that statute was allegedly violated, which relates to the existence of a particular claim, not to whether a private action is statutorily implied.

The *Sawyer* formulation, it is said, is different than the classic legislative intent standard that applies under federal law, *i.e.*, for implying private tort actions emanating from federal statutes. (*Sawyer, supra*, 432 N.E.2d at 853, 59 Ill. Dec. at 909.[3]) Although at first blush the Illinois *Sawyer* test appears to depart significantly from traditional legislative intent analysis, close review of the opinion demonstrates that *Sawyer* rests on the intent of the legislature (or perhaps the constructive legislative intent) in the particular enactment:

"It is clear that it is *not necessary to show* a *specific legislative intent* to create a private right of action. If there is no indication that the remedies available are only those the legislature expressed in the Act, then where it is consistent with the underlying purpose of the Act and necessary to achieve the aim of the legislation a private right of action can be implied. [citations omitted.] The court looks to the *totality of circumstances* in endeavoring *to discover legislative intent.* [citation omitted.]" *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 378, 432 N.E.2d 849, 852, 59 Ill. Dec. 905, 908 (emphasis added).[4]

Under the *Sawyer* formulation, three of the four "factors" are distinct tests of legislative policy and intent: (i) absence of legislative "indication" of limits on the statutory remedies [the second factor]; (ii) "consistency" with the underlying legislative purpose of the statute [the third factor]; and (iii) "necessity" of a private damages action to adequately remedy violations of the statute [the fourth factor]. The ultimate measure of "implied" legislative intent under *Sawyer* is plainly the fourth factor: the

---

[3] In *Sawyer*, our Supreme Court held that federal law governed the federal statutory-implication issue, and cited *Texas Industries, Inc. v. Radcliff Materials, Inc.* (1981), 451 U.S. 630 and other U.S. Supreme Court decisions going back to *Cort v. Ash* (1975), 422 U.S. 66, which articulated a 4-factor federal test that included "indication of legislative intent to create or deny such a remedy." (*See also, Lehmann v. Arnold* (4th Dist. 1985), 137 Ill. App. 3d 412, 484 N.E.2d 473, 481, 91 Ill. Dec. 914, 922) (recognizing implied private action under the Plat Act; rejecting implied private action under the National Flood Insurance Act of 1968), the only Illinois case that has come to our attention that involved, as here, a claim of an implied *state* tort predicated on a *federal* statute, which *Lehmann* held was precluded by "[d]eference to Congress and principles of federalism."

[4] Ironically, the particular "implication" holding of *Sawyer* was legislatively reversed by a 1986 amendment to Real Estate License Act. *See Stefani v. Baird & Warner, Inc.* (1st Dist. 1987), 157 Ill. App. 3d 167, 510 N.E.2d 65, 70, 109 Ill. Dec. 444, 449.

"necessity" finding. Thus a court may allow an implied private action only when "necessity"—to enforce the legislatively-established policy—requires it.

Although this compels a judicial determination of necessity where the legislature has not explicitly made one, and although *Sawyer* does not require an affirmative intend reflected in the legislation or its history, the *Sawyer* analysis remains one of legislative implication rather than judicial creation. Nevertheless, the determination of "necessity" can be characterized as judicial policymaking by inference and demands a conservative application:

"Although the courts * * * imply private causes of action where there exists a clear need to effectuate the purpose of an act (*see Sawyer* [cite omitted]) the judiciary by implying causes of action is assuming policy-making authority, a power more properly exercised by the legislature. The court should exercise such authority with due caution." [citations omitted.]

*Galinski v. Kessler* (1st Dist. 1991), 134 Ill. App. 3d 602, 480 N.E.2d 1176, 1180, 89 Ill. Dec. 433, 437 (rejecting implied private civil action under the [criminal] barratry statute).

This conservative view of *Sawyer*'s application has been followed in *Peel v. Yellow Cab Co.* (1st Dist. 1986), 147 Ill. App. 3d 992, 498 N.E.2d 788, 101 Ill. Dec. 464 (rejecting implied private action under municipal Consumer Services Ordinance), and was reemphasized by our Supreme Court in *Board of Education of City of Chicago v. A, C and S, Inc.* (1989), 131 Ill. 2d 428, 546 N.E.2d 580, 600, 137 Ill. Dec. 635, 655 (rejecting implied private civil action under Illinois Asbestos Abatement Act) (emphasis by the Court):

"*Sawyer* was clear that we will 'imply a private remedy where there exists a *clear need* to effectuate the purpose of an act.'" Emphasis added, cite omitted.

The appellate court has generally applied *Sawyer* with the caution admonished in the later *Galinski, supra,* and *A, C and S* opinions. *Sawyer* has thus

spawned a substantial body of caselaw that reflects a reluctance to imply private damages actions in a wide range of statutes.[5]

This Court also notes the limiting construction imposed on the "policy consistency" factor (the second *Sawyer* factor) in a line of recent decisions that holds that only remedial statutes, as distinguished from prohibitory statutes, can imply an unstated private tort action, *i.e.*, that an implied private action is consistent only with an underlying remedial purpose of a statute. *E.g., Rhoades v. Mill Race Inn, Inc.* (2d Dist. 1984), 126 Ill. App. 3d 1024, 467 N.E.2d 915, 81 Ill. Dec. 793 (rejecting implied private action under the Safety Glazing Materials Act); *Lane v. Fabert* (4th Dist. 1989), 178 Ill. App. 3d 698, 533 N.E.2d 546, 127 Ill. Dec. 674 (rejecting implied private action under the Pawnbrokers Act).

We review the Illinois implied statutory tort caselaw in part because this issue, particularly the application of *Sawyer*, is a matter of first impression in this Court, and in part because in this case we are asked to apply the *Sawyer* factors to imply a private damages action from a statute that is qualitatively different from the statutes involved in the reported precedents.

---

[5] *See, e.g., Ficke v. Evangelical Health Systems* (1st Dist. 1996), 674 N.E.2d 888, 221 Ill. Dec. 94 (rejecting implied private action for patients' families under the Health Care Surrogate Act); *Parra v. Tarasco, Inc.* (1st Dist. 1992), 230 Ill. App. 3d 819, 595 N.E.2d 1186, 172 Ill. Dec. 516 (rejecting implied private action under the Choke-Saving Methods Act); *Davis v. Dunne* (1st Dist. 1989), 189 Ill. App. 3d 739, 545 N.E.2d 539, 136 Ill. Dec. 1015 (rejecting implied private action under the Civil Service Act); *Lane v. Fabert* (4th Dist. 1989) 178 Ill. App. 3d 698, 533 N.E.2d 546, 127 Ill. Dec. 674 (rejecting implied private action under the Pawnbrokers Act); *Anzinger v. Illinois State Medical Inter-Insurance Exchange* (1st Dist. 1986), 144 Ill. App. 3d 719, 494 N.E.2d 655, 98 Ill. Dec. 533 (rejecting implied private action for rate violations under the Illinois Insurance Code; *Peel v. Yellow Cab Co., Inc.* (1st Dist. 1986), 147 Ill. App. 3d 992, 498 N.E.2d 788, 101 Ill. Dec. 464 (rejecting implied private action under the City Consumer Services Ordinance); *Anzinger v. Illinois State Medical Inter-Ins. Exchange* (1st Dist. 1986), 144 Ill. App. 3d 719, 494 N.E.2d 655, 98 Ill. Dec. 533 (rejecting implied private action for reparation under the Insurance Code); *Cook v. Optimum/Ideal Managers, Inc.* (2d Dist. 1984), 130 Ill. App. 3d 180, 473 N.E.2d 334, 84 Ill. Dec. 932 (rejecting implied private actions for retaliatory termination of payments and for withholding of medical reports under Workers' Compensation Act);

The statute at issue here, section 2—123(h) of the Vehicle Code, is different from the statutes and ordinances that have been reviewed for implied private actions in the reported decisions in two respects. First, the legislation in the reported cases was of general or near-general application. Thus an implied private damages action could lie against a broad spectrum of potential defendants. In contrast, section 2—123(h) is not merely of limited applicability, but is applicable uniquely to a single State officer. Second, the liability that would be created by a private tort action under section 2—123(h) would uniquely be that of the State.

This character of this statute raises troublesome questions for "implied" legislative intent to create a private damages action. Since this statute, and thus any "implied" private action emanating from it, are uniquely aimed at the State, the underlying analysis of legislative intent runs smack into the doctrine of sovereign immunity—which is not implicated in any of the reported Illinois decisions on implied statutory torts. To find legislative intent supporting a viable damages action in such an enactment, the Court would necessarily have to find that the General Assembly impliedly intended to waive the

*Thompson v. Tormike, Inc.* (1st Dist. 1984), 127 Ill. App. 3d 674, 469 N.E.2d 453, 82 Ill. Dec. 919 (rejecting implied private action under City nuisance ordinance); *Rhoades v. Mill Race Inn, Inc.* (2d Dist. 1984), 126 Ill. App. 3d 1024, 467 N.E.2d 915, 81 Ill. Dec. 793 (rejecting implied private action under the Safety Glazing Materials Act); *Kinney v. St. Paul Mercury Ins. Co.* (1st Dist. 1983), 120 Ill. App. 3d 294, 458 N.E.2d 79, 75 Ill. Dec. 911 (rejecting implied additional private action under the Insurance Code).

We do not suggest by omission that post-*Sawyer* appellate decisions have consistently rejected implied statutory torts. To the contrary, *see, e.g., Noyola v. Board of Education of City of Chicago* (1st Dist. 1996), 284 Ill. App. 3d 128, 671 N.E.2d 802, 219 Ill. Dec. 635 (recognizing implied private action under the School Code as to Chapter 1 funds); *Witt v. Forest Hospital, Inc.* (1st Dist. 1983), 115 Ill. App. 3d 481, 450 N.E.2d 811, 71 Ill. Dec. 123 (recognizing implied private retaliatory discharge action under the Guardianship and Advocacy Act); *Lehmann v. Arnold* (4th Dist. 1985), 137 Ill. App. 3d 412, 484 N.E.2d 473, 91 Ill. Dec. 914 (recognizing implied private action under the Plat Act; rejecting implied private action under the National Flood Insurance Act of 1968).

State's sovereign immunity. We cannot say that such implication can never be found. But this is a difficult and arguably additional hurdle to be faced by a Claimant urging, in *Sawyer* terms, absence of legislative limits on the statutory remedies, "consistency" with underlying legislative policy and "clear necessity" to adequately remedy statutory violations.

In this case, we perceive no basis that remotely suggests such an implication. We also find that the Claimants' contentions fail to meet the first, third, and fourth *Sawyer* factors.

On the first factor, which is or is equivalent to a standing requirement, we need only reiterate our finding in our initial opinion that the statute in issue simply does not reach or cover the alleged violation asserted by these Claimants. The statute applies *only* to the Secretary of State, and is aimed specifically at social security numbers gathered in the course of the Secretary's official duties; this disclosure prohibition does not apply to the IDOL. Thus, in *Sawyer* terms, these Claimants are not "members of the class for whose benefit the Act was enacted" or of the "particular class" sought to be protected by section 2—123(h).

Claimants' proposed private tort action also fails to meet the "consistency" standard of the second *Sawyer* factor, in that this statute is not remedial.

Finally, and terminally, these Claimants have not persuaded us, and indeed have not offered any cogent argument, that a private damages action is "clearly necessary" or just plain necessary to enforce the governmental non-disclosure policy of this statute.

Conclusion and Order

Claimants' petition for rehearing is denied. The order of May 7, 1997, is reaffirmed.

## ORDER

EPSTEIN, J.

This cause is before the Court on Claimants' complaint. This cause was scheduled for hearing before a Commissioner of this Court on May 10, 1999. No one attended this hearing on behalf of Claimants and Claimants have not contacted the Court to explain this absence. The Court has since learned that Claimants' attorney of record is no longer licensed to practice law in the State of Illinois. Claimants were ordered to have another attorney enter an appearance within sixty days, but have failed to do so.

It is hereby ordered that this cause is dismissed for want of prosecution.