ROBERT ANZINGER *et al.*, Plaintiffs-Appellants, v. ILLINOIS STATE MEDICAL INTER-INSURANCE EXCHANGE, Defendant-Appellee.

First District (1st Division)   No. 84—1948

Opinion filed May 27, 1986.

Dan Karlin, Ltd. and Stuart Perlman, of Chicago (Daniel Karlin & Stuart Perlman, of counsel), for appellants.

Epton, Mullin & Druth, Ltd., of Chicago (Gerald B. Mullin and Mary F. Stafford, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

The plaintiffs, who are emergency room physicians licensed to practice in Illinois, appeal the circuit court's dismissal of their class action complaint against defendant, Illinois State Medical Inter-Insurance Exchange (ISMIE), to recover what was claimed to be excessive premiums they had paid for medical malpractice insurance. ISMIE is a physician owned and controlled reciprocal insurance company which writes medical malpractice insurance for Illinois physicians. The premiums plaintiffs claimed to be excessive were collected pursuant to a rate schedule filed with the Director of Insurance (Director), and subsequently approved by him following a hearing. Later the rate in question was found to be excessive and unfairly discriminatory by the circuit court of Cook County on judicial review. This court affirmed the circuit court's decision. *Anzinger v. O'Connor* (1982), 109 Ill. App. 3d 550, 440 N.E.2d 1014.

The plaintiffs initially challenged defendant's 1977 rate and classification filing as it pertained to emergency room physicians by filing a petition with the Director seeking review of the rates charged by the defendant. The plaintiffs asserted that the rates did not conform with the requirements and standards of the Illinois Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 613 *et seq.*). Specifically, the plaintiffs contended that the rates charged to emergency room physicians violated section 155.18(b) of the Insurance Code which prohibited insurance rates that are excessive and unfairly discriminatory. Ill. Rev. Stat. 1977, ch. 73, par. 767.18(b).

Following a hearing convened by the Director and conducted before a hearing officer appointed by the Director, the classification system was found not unfairly discriminatory towards emergency room physicians and the rates charged were found not to be excessive. The Director adopted the findings of the hearing officer and determined on March 24, 1980, that the rates charged by ISMIE were permissible. Subsequently, as previously stated, the circuit court reversed the decision of the Director as contrary to the manifest weight of the evidence and found the rates charged were in fact unfairly discriminatory and excessive. Thereafter, upon remand from the appellate court following its decision affirming the trial court's decision, the Director, on May 31, 1983, vacated his previous order, reversed his findings and prohibited use of the successfully challenged rates after July 1, 1983, pursuant to section 155.18(d)(1) of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 767.18(d)(1)).

The plaintiffs then brought the instant action on behalf of themselves and all other emergency room physicians who purchased medical liability insurance from ISMIE between July 1, 1977, and June 30, 1983. These dates represented the period in which the defendant collected premiums under the questioned rate. The defendant, ISMIE, filed two motions, one to strike plaintiffs' complaint and dismiss the action under section 2—615 of the Code of Civil Procedure for failure to state cause of action, and a second requesting an involuntary dismissal of the action under section 2—619 of the Code for various other reasons. (Ill. Rev. Stat. 1983, ch. 110, pars. 2—615, 2—619.) Thereafter, on July 12, 1984, the trial court granted both motions and dismissed the plaintiffs' suit with prejudice.

The plaintiffs in their appeal urge this court to recognize an implied right of action under section 155.18 of the Insurance Code to recover premiums paid to an insurance company that are ultimately determined to be excessive and unfairly discriminatory under the standards set forth in that section. The plaintiffs submit that a pri-

vate right of action may be implied here under the same rationale that our supreme court utilized when it implied a private right of action under the Real Estate Brokers and Salesmen License Act in *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849. Such an action would be consistent, plaintiffs argue, with the underlying policy of the Insurance Code and is necessary to effectuate the purpose of the statute itself since the premiums have been judicially determined to be in violation of the Code and the Director has only prospective enforcement authority.

ISMIE, on the other hand, contends that the situation here is quite different than that presented in the *Sawyer* case and the other cases cited by the plaintiff. This case is a rate case where the questioned rate was adopted pursuant to a statute which established a legislatively approved scheme of rate making, and, hence, no right to a refund exists, the defendant contends, express or implied. The system here, ISMIE says, was one of prospective rate regulation, and thus, there was no authority for the Director to order, or for a private litigant to claim, a refund of premiums paid under a contract of insurance issued when the rate was in effect, even if the rate was later disapproved.

In support of this contention, the defendant relies on *Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 117 N.E.2d 774, where the court held that an authorized rate, later set aside on judicial review, cannot be deemed excessive for the purpose of awarding reparations. The court there said that a private action for damages would not lie and there could be no recovery of the difference between the old and new rates under the circumstances unless a right of action was specifically conferred by statute. Here, as the defendant points out, no such right was granted under the Insurance Code. Also, the defendant further contends that, as *Mandel Brothers* noted, any attempt to refund payment made pursuant to an approved rate would be inconsistent with the requirement of the statutory scheme that the rate must be charged until it is set aside or subsequently disapproved.

We concur with the defendant's argument that the policy of the statutory scheme under the circumstances here does not allow for the imputation of a private cause of action. Even in the *Sawyer* case, cited by the plaintiffs, the court there expressly stated that a private right of action cannot always be implied. The court said:

> "If there is no indication that the remedies available are only those the legislature expressed in the Act, [and] then where it is consistent with the underlying purpose of the Act and neces-

sary to achieve the aim of the legislation, [then] a private right of action can be implied. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172; *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21.) The court looks to the totality of circumstances in endeavoring to discover legislative intent. *Hoover v. May Department Stores Co.* (1979), 77 Ill. 2d 93." *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 386, 432 N.E.2d 849.

Here the statute clearly sets forth the remedies that are available, and where as here, the particular rates, *i.e.*, charges, were, following a hearing, approved by the Director, an implied right of action would clearly be inconsistent with the policy and purpose of the Act.

Rate making by government, historically, has been considered to be prospective only because government is viewed as acting in its legislative capacity when it sets rates, and it is a long standing principle that the legislature acts prospectively and not retroactively. (Poor, *Utility Rates Pending Judicial Review: A Riddle Wrapped in a Mystery in Illinois*, 17 J. Mar. L. Rev. 743, 752-56 (1984).) This was the basis for the proposition recognized and set forth in *Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 117 N.E.2d 774, that the approval of the schedule of rates there was legislative in character and prospective in operation, and thus, afforded no basis for a right of action for any reparation or damages where the rates were subsequently reduced or set aside.

The common law right to recover reparations for unreasonable charges had been superceded, the *Mandel Brothers* court observed, by the enactment of the statute there. At common law, certain enterprises, most notably common carriers, were considered to owe a special duty to serve the public at large and to do so at a reasonable rate because of the nature of their function. (See *Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Ry. Co.* (1932), 284 U.S. 370, 76 L. Ed. 348, 52 S. Ct. 183; *Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co.* (1907), 204 U.S. 426, 51 L. Ed. 553, 27 S. Ct. 350.) Reparation for these charges would then be awarded to the customer in much the same way as they would be awarded in the usual breach of contract action. Poor, *Utility Rates Pending Judicial Review: A Riddle Wrapped in a Mystery in Illinois*, 17 J. Mar. L. Rev. 743, 753 (1984).

However, when government assumed the burden of determining through its administrative agencies or bodies what were reasonable rates, it did so, as stated above, in its legislative capacity and only in a prospective manner. Thus, when the agency or body sets the rates, these then are the only lawful rates that can be charged and remain such until overturned or set aside by a court. Again, as the court in

*Mandel Brothers* stated, there is no basis for a refund under such circumstances if a rate was subsequently set aside because the government agency had determined that the initial rate was reasonable and that only this rate could be charged. It would be inconsistent with the scheme of the statute itself, the court in *Mandel Brothers* said, if, in charging the required rate which had been found just and reasonable by the commission or agency, the company becomes liable for a claim of reparations on the ground that the rate charged was excessive.

The plaintiffs argue, however, that in the *Mandel Brothers* case, unlike the case here, the statute specifically provided for reparations where there were unreasonable charges by the public utilities, and, also, the statute there provided that the Commerce Commission had the power to establish and fix rates and not merely the power to disapprove the rate. We do not find these distinctions persuasive and particularly do not find them persuasive under the circumstances here.

As the defendant points out, section 155.18 of the Insurance Code requires every company writing medical liability insurance to file its schedule of rates and classification system with the Director at least once a year. (Ill. Rev. Stat. 1983, ch. 73, pars. 767.18(c)(1) through (c)(3).) Rates are to be determined in the manner set forth in the statute and are to be based upon the company's past experience. (Ill. Rev. Stat. 1983, ch. 73, pars. 767.18(a), (b)(1) through (4).) The company must charge only the filed rate, unless changed, or, after a hearing, the Director concludes that the rate violates a provision of the statute. (Ill. Rev. Stat. 1983, ch. 73, par. 767.18(c).) When the Director determines a violation exists, he may issue an order specifying the violation and stating when, within a reasonable period of time, further use of such rate or rate system by such company in a contract of insurance made thereafter shall be prohibited. Ill. Rev. Stat. 1983, ch. 73, par. 767.18(d)(1).

In a case very similar to ours, the United States Supreme Court in *T.I.M.E. Inc. v. United States* (1959), 359 U.S. 464, 3 L. Ed. 2d 952, 79 S. Ct. 904, held that a shipper did not have an implied cause of action under the Motor Carrier Act for past unreasonable rates which had been charged by a shipper even though the Act specifically provided that only just and reasonable rates could be charged for any motor carrier service. The statute in *T.I.M.E. Inc.*, similar to the one here, required only that the carrier file its rates for them to become effective and that no prior approval was necessary. Furthermore, the specific statute at issue in *T.I.M.E. Inc.* did not provide a statutory action for reparation, as did the Federal statutes, and, the plaintiffs

here have observed, as our Public Utilities Act does. In fact, the statute in *T.I.M.E. Inc.* expressly indicated that any other remedy or any other action "not inconsistent" was not extinguished. The Supreme Court, nevertheless, ruled that there could be no private right of action for reparations since under the statutory scheme of regulation, it was the agency whose function it was, in the first instance, to determine whether the filed rates were reasonable. Therefore, the court said that to allow any common law right to recover for excess charges would be inconsistent with the commission's primary jurisdiction to determine rates. Thus, the Supreme Court held that, even though the rate did not require prior approval before use, since it was the commission's function to determine the reasonableness of the rates charged, it would be contrary to the statutory scheme to allow the courts to retroactively perform this function in an implied right of action for reparations. The court further observed that the legislative body must be presumed to be aware of the fact that a common law right of action to recover unreasonable rate charges is incompatible with such a statutory scheme in which the primary issue of reasonableness is committed exclusively to an agency other than the courts. Accordingly, the court said that intent of the legislature must be presumed to be that there was to be no recovery unless allowed by statute.

While our statutory procedure is somewhat different than the procedure of the Motor Carrier Act in the *T.I.M.E. Inc.* case, particularly in that the Director in Illinois does not have the power to suspend the effectiveness of the proposed rate while its reasonableness is scrutinized, we nevertheless find the reasoning of the *T.I.M.E. Inc.* case to be persuasive here. Additionally, we also do not find the method of setting the rates in our statute to be critical. Under the Insurance Code, the rate is initially set by the carrier, becomes effective on filing, and the rate or premiums can then be challenged as unreasonable and/or improper and the Director may, after a hearing, prohibit its further use. (Ill. Rev. Stat. 1983, ch. 73, par. 767.18.) The other principal manner of setting rates as the statute authorized in the *Mandel Brothers* case is for the agency itself to determine and set a rate as just and reasonable. These different methods of setting rates may be important in determining whether reparations are available in some instances (see Poor, *Utility Rates Pending Judicial Review: A Riddle Wrapped in a Mystery in Illinois*, 17 J. Mar. L. Rev. 743, 753 (1984)), but this difference is not significant under the facts of our case.

Under the Insurance Code in Illinois, the legislature has still given the exclusive initial determination of the reasonableness and nondis-

criminatory nature of rates charged for medical malpractice insurance to the agency, *i.e.*, the Director here. The recognition of an implied right to recover where the rates have been subsequently determined to be excessive and discriminatory would, we believe, as did the Supreme Court in *T.I.M.E. Inc.*, be inconsistent with the purpose of the Act and the specific limited remedies provided under our statutory scheme. Also, the only rates that can be charged here, as in the *T.I.M.E. Inc.* case, are those that are filed with the Director, and they must be charged until changed or set aside by the Director. Here, in fact, the Director found these rates to be reasonable and not unfairly discriminatory. Thus, these were the rates that ISMIE was required to charge and did charge, and it would not be consistent with the statute, as *Mandel Brothers* noted, to now hold that these rates can be the basis of a claim for recovery of unlawfully charged excessive rates. See *State ex rel. Commissioner of Insurance v. North Carolina Fire Insurance Rating Bureau* (1977), 292 N.C. 471, 234 S.E.2d 720; *Caldwell v. Insurance Co. of North America* (1975), 235 Ga. 141, 218 S.E.2d 754.

Therefore, we hold that the plaintiffs had no private or implied cause of action for reparations, and that the trial court properly dismissed their class action. While the plaintiffs have also raised numerous other grounds for error, by reason of our conclusion that no cause of action for reparations exists at all, we need not consider those issues.

We do note, however, though not specifically raised in the appeal, that the defendants filed a hybrid motion to dismiss here, challenging, on the one hand, the legal sufficiency of the complaint, but on the other hand, admitting the sufficiency of the complaint, and claiming that a defense to the action barred recovery. This type of procedure has been expressly disapproved by our supreme court and this court. (See *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605; *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360; *Morrey v. Kinetic Services, Inc.* (1985), 133 Ill. App. 3d 1002, 479 N.E.2d 953.) Inasmuch as there was no prejudice to the plaintiff by the procedure in this case, we do not find any error. (*Cf. Premier Electrical Construction Co. v. La Salle National Bank* (1983) 115 Ill. App. 3d 638, 450 N.E.2d 1360.) We have considered the case under the section 2—615 motion which is the first motion to be considered in such circumstances, since it raises the threshold question of whether or not a cause of action has been stated in the case. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312

N.E.2d 605.) Here, we have found that no cause of action could be stated in this case, and thus, the complaint was properly dismissed.

Accordingly, for the reasons stated, we affirm the judgment of the circuit court.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.