NOTICE
Decision filed 01/29/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 170296

NO. 5-17-0296

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| JEFFREY A. CORBIN, MARGARET A. CORBIN, and ANNA TRYFONAS, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 16-L-880 |
| THE ALLSTATE CORPORATION, ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY AND CASUALTY COMPANY, and ALLSTATE FIRE AND CASUALTY COMPANY, | ) ) ) ) ) ) | Honorable |
| Defendants-Appellants. | ) ) | Barbara L. Crowder, Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justice Chapman concurred in the judgment and opinion.
Justice Moore dissented, with opinion.

**OPINION**

¶ 1    Plaintiffs—Jeffrey A. Corbin, Margaret A. Corbin, and Anna Tryfonas—filed a class action complaint against defendants—The Allstate Corporation, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Company, and Allstate Fire and Casualty Company (collectively "Allstate")—in the circuit court of Madison County. Plaintiffs alleged that Allstate engaged in deceptive and unfair business practices in violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2012)) and was unjustly enriched by charging its longtime, loyal customers higher

1

auto insurance premiums than other customers based on undisclosed, non-risk-based factors. Allstate filed a motion to dismiss and argued, in part, that plaintiffs' claims were barred by the filed rate doctrine and the primary jurisdiction doctrine. The circuit court denied Allstate's motion to dismiss but granted its subsequent motion to certify the following questions for interlocutory review under Illinois Supreme Court Rule 308(a) (eff. Jan. 1, 2016): (1) "Whether Plaintiffs' claims regarding automobile insurance rates filed with the Illinois Department of Insurance are barred by the filed rate doctrine" and (2) "Whether the Illinois Department of Insurance and its Director have primary jurisdiction to determine if the complained of conduct by a regulated automobile insurance company constitutes unfair or deceptive trade practice." Allstate filed an application for leave to appeal under Rule 308, and this court granted interlocutory review. For reasons that follow, we answer the certified questions in the negative.

¶ 2                                    I. BACKGROUND

¶ 3      Allstate sells property and casualty insurance, including private passenger automobile insurance (auto insurance), to consumers in Illinois. The named plaintiffs are Illinois residents and consumers who have purchased auto insurance from Allstate for two decades or more. According to the complaint, Allstate collected and analyzed data and determined that loyal, longtime policyholders were willing to pay higher premiums than the risk they presented. Plaintiffs claimed that since 2012, Allstate has considered its policyholders' willingness to tolerate premium increases as a factor in calculating auto insurance rates. Plaintiffs further claimed that Allstate began charging its longtime policyholders higher premiums than it charged new customers who presented the same risk but were less willing to tolerate a price increase. This practice is referred to as "elasticity of demand" or "price optimization." Plaintiffs alleged that Allstate used this non-risk-based factor in calculating its premium rates for auto insurance,

2

but did not disclose its use of this factor in its rate filings with the Illinois Department of Insurance (Department) and in its communications with existing customers regarding renewal of their auto policies. In count I, it is alleged that Allstate has engaged in unfair and deceptive practices in developing rating methodologies and in advertising, marketing, and selling their auto insurance products, and thereby violated the Consumer Fraud Act. Count II was also brought under the Consumer Fraud Act and alleged that Allstate's failure to disclose its use of price optimization is unethical, oppressive, unscrupulous, and offends public policy. In count III, it is alleged that Allstate has unjustly enriched itself by employing hidden price optimization practices. Plaintiffs' prayer for relief includes money damages, equitable and/or injunctive relief, and restitution or disgorgement of ill-gotten gains from unjust enrichment.

¶ 4    Allstate filed a motion to dismiss plaintiffs' complaint, arguing in part that the action was barred by the filed rate doctrine and the primary jurisdiction doctrine. Allstate acknowledged that Illinois is unique because it had decided to maintain a free market system for most property and casualty insurance, including auto insurance, and that except for a broad and general prohibition against discriminatory pricing based on race, color, religion, physical disability, and national origin, Illinois allows auto insurers to select their own rates based on their business and market objectives. Allstate noted that it is required to file its rates and underwriting manuals, as well as any rate changes, with the Director of the Department of Insurance (Director) and that it is required to calculate and charge premiums in accordance with the filed rates. Allstate acknowledged that the Director has no authority to approve or disapprove the filed rates. Allstate argued that the Director is vested with general oversight of the insurance industry, including automobile insurance rates (215 ILCS 5/401 (West 2012)), and authorized to evaluate and

3

declare that an insurer's trade practices constitute unfair methods of competition or deceptive practices (215 ILCS 5/429 (West 2012)).

¶ 5   Following a hearing, the circuit court denied Allstate's motion to dismiss. In its order, the court determined that Allstate failed to establish that plaintiffs' complaint should be dismissed at the pleading stage under either the filed rate doctrine or the primary jurisdiction doctrine. The court noted that Illinois is unique in that insurers may select their own rates and merely inform the Department of Insurance of their selection. The court found that none of the cases cited indicated that the Department has the authority to review and disapprove of the filed rates. Subsequently, the court granted Allstate's motion to certify two questions pursuant to Rule 308. This court granted interlocutory review of those questions.

¶ 6                                    II. ANALYSIS

¶ 7   Illinois Supreme Court Rule 308(a) (eff. Feb. 26, 2010) provides for an interlocutory appeal from an order not otherwise appealable if the trial court finds that "the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," and the appellate court, in its discretion, permits an appeal from that order. Generally, the scope of review in a Rule 308 appeal is limited to the questions of law identified by the trial court. *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21, 102 N.E.3d 162. A court of review will decline to answer a certified question where the answer is dependent upon the underlying facts of a case or where the question calls for an answer that is advisory or provisional. *Rozsavolgyi*, 2017 IL 121048, ¶ 21; *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 469, 693 N.E.2d 358, 364 (1998). A certified question presents a question of law subject to *de novo* review. *Rozsavolgyi*, 2017 IL 121048, ¶ 21.

4

¶ 8    The first question certified by the circuit court asks whether plaintiffs' claims regarding automobile insurance rates filed with the Illinois Department of Insurance are barred by the filed rate doctrine. The filed rate doctrine protects public utilities and other regulated entities from civil actions if the entity is required to file its rates with the governing regulatory agency and the agency has the authority to set, approve, or disapprove the rates. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 55, 809 N.E.2d 1248, 1263 (2004); *Cohen v. American Security Insurance Co.*, 735 F.3d 601, 607 (7th Cir. 2013). Under the doctrine, any filed rate that is approved by the governing regulatory agency is *per se* reasonable and unassailable in judicial proceedings brought by rate payers. *Adams*, 211 Ill. 2d at 55. The two companion principles at the core of the filed rate doctrine are (a) the need to prevent carriers from engaging in price discrimination as between ratepayers and (b) the preservation of the exclusive role of agencies in setting and approving uniform rates, as there is a historical aversion to rate setting by courts. *Arsberry v. Illinois*, 244 F.3d 558, 562 (7th Cir. 2001); *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 19 (2d Cir. 1994).

¶ 9    The Illinois Administrative Code requires companies who write specific types of insurance, including private passenger automobile insurance, to file their rates, along with underwriting manuals containing rules for applying rates, with the Illinois Department of Insurance no later than 10 days after the stated effective date of the rate. 50 Ill. Adm. Code 754.10, 754.40 (2018). The Department of Insurance, however, has not been given explicit authority to approve or disapprove the rates charged, either prior or subsequent to the filing of the rates.

¶ 10    Prior to 1969, Illinois required "prior approval" of insurance rates by the Illinois Department of Insurance. Ill. Rev. Stat. 1949, ch. 73, § 1065.1 *et seq.* In 1969, the Illinois

General Assembly enacted an open competition rating law, which went into effect on January 1, 1970. See Pub. Act 76-943 (eff. Jan. 1, 1970) (adding Ill. Rev. Stat. 1969, ch. 73, § 1065.18-1 *et seq.*). The purpose of the legislation was to "promote the public welfare by regulating insurance rates" as provided therein, in order that the rates "shall not be excessive, inadequate or unfairly discriminatory." Ill. Rev. Stat. 1969, ch. 73, § 1065.18-1. The express intent of the legislation was to permit and encourage competition between companies to the fullest extent possible, and "nothing in this Article is intended to give the Director power to fix and determine a rate level by classification or otherwise." Ill. Rev. Stat. 1969, ch. 73, § 1065.18-1. The legislature included a sunset clause providing that the open competition law would be "effective only until August 1, 1971, unless the General Assembly extends the term of or removes this restriction on the period during which this Article is to be applicable." Ill. Rev. Stat. 1969, ch. 73, § 1065.18-1.

¶ 11   The legislature did not renew the open competition rating law in August 1971. Nor did it reinstate the "prior approval" law or enact a new rating law. Thus, Illinois was left without any property, casualty, and motor vehicle insurance rating laws. See Ill. Rev. Stat. 1975, ch. 73, § 1065.18-1 *et seq.*; see also Jon S. Hanson, *et al.*, National Association of Insurance Commissioners, Monitoring Competition: A Means of Regulating the Property and Liability Insurance Business, 420-422 (May 1974); Stephen P. D'Arcy, *Insurance Price Deregulation: The Illinois Experience*, in Deregulating Property-Liability Insurance: Restoring Competition and Increasing Market Efficiency 248, 256-60 (J. David Cummins ed., 2002). In June 1972, the legislature enacted a law authorizing "qualified advisory organizations" to compile statistics, formulate insurance policies, and develop underwriting rules, but the legislation contained no provisions for rate-making standards or regulations. See Pub. Act 77-1882 (eff. Oct. 1, 1972)

6

(adding Ill. Rev. Stat. 1973, ch. 73, § 735A-1 *et seq.* (now codified at 215 ILCS 5/123A-1 *et seq.*)); 77th Ill. Gen. Assem., House Proceedings, May 15, 1972, at 57 (statements of Representative Epton).

¶ 12    The history indicates that the Illinois legislature has determined that open competition in auto insurance rates is workable and beneficial. Consequently, insurers, such as Allstate, are free to establish rates in response to their independent assessments of economic and market conditions, and the Department of Insurance has not been given the authority to set, approve, or disapprove of those rates. Because Allstate's private passenger automobile insurance rates were not set, approved, or disapproved by the Department of Insurance, Allstate is afforded no protection under the filed rate doctrine.

¶ 13    Allstate cites *Horwitz v. Bankers Life & Casualty Co.*, 319 Ill. App. 3d 390, 745 N.E.2d 591 (2001), and *Anzinger v. Illinois State Medical Inter-Insurance Exchange*, 144 Ill. App. 3d 719, 494 N.E.2d 655 (1986), in support of its argument that the filed rate doctrine should be applied here. We have reviewed those cases and find them distinguishable. Initially, we note that neither *Horwitz* nor *Anzinger* analyzed the filed rate doctrine in light of Illinois's unique open competition environment in the area of auto insurance rates. In *Horwitz*, the court considered whether the filed rate doctrine barred plaintiff's challenge to the manner in which a health insurance company calculated and applied premium rates on individual health insurance policies written in Colorado. After determining that the laws of Colorado applied, the court found that under Colorado's statutory and regulatory scheme, the insurance commissioner was authorized to approve or disapprove rate filings by health insurers, to investigate insurers to ensure compliance with Colorado insurance law, to prohibit insurers from using excessive or illegal rates, and to

7

order refunds of excess premiums to policyholders, and that plaintiff's claims were barred by the filed rate doctrine. *Horwitz*, 319 Ill. App. 3d at 405-06.

¶ 14 In *Anzinger*, plaintiffs appealed the dismissal of a class action complaint against the insurer, seeking reparations for excessive premiums they had paid for medical malpractice insurance. The challenged premiums had been collected in accordance with a rate schedule that had been filed with the Director of Insurance. Initially, plaintiffs filed a petition with the Department, challenging the rates as excessive and unfairly discriminatory. Following an administrative hearing, the Director approved the rates, and plaintiffs sought judicial review. The circuit court determined that the rates were excessive and unfairly discriminatory, and the decision was affirmed on appeal. Upon remand, the Director vacated his findings and prohibited use of those rates. Plaintiffs then filed a class action suit to recover the excess premiums that had been found unfairly discriminatory and excessive. On appeal from the dismissal of plaintiffs' action, the appellate court determined that the Director had been given the exclusive initial determination of the reasonableness and discriminatory nature of the rates charged for medical malpractice insurance under section 155.18 of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1983, ch. 73, ¶ 767.18) and that plaintiffs had no private right to recover where the rates were approved by the Director and subsequently found to be excessive and discriminatory by the reviewing court. *Anzinger*, 144 Ill. App. 3d at 723-24. Thus, *Anzinger* involved plaintiffs seeking reparations for medical malpractice premiums initially approved by the Director, but subsequently determined to be excessive under malpractice rate standards set forth in section 767.18 of the Code specifically addressing medical liability insurance.

¶ 15 The factual allegations and issues in the present case arise in a very different context. Illinois has embraced open competition in regard to rate setting for auto insurance. In Illinois,

insurers such as Allstate are free to establish auto insurance rates in response to their individual assessments of economic and market conditions. The Director has not been given any administrative authority to set, approve, or disapprove of those rates. Under the current scheme in Illinois, the auto insurance rates filed by Allstate, or any other auto insurance company, are not subject to regulatory approval by the Department of Insurance. Thus, the filed rate doctrine is not applicable. Accordingly, we answer the first certified question in the negative.

¶ 16    The second certified question asks whether the Illinois Department of Insurance has primary jurisdiction to determine if the complained-of conduct by a regulated automobile insurance company constitutes an unfair or deceptive trade practice. The doctrine of primary jurisdiction proposes that even though the circuit court has jurisdiction over a matter, the court should, in some instances, stay the judicial proceedings and allow an administrative agency to decide an issue when the agency has specialized or technical expertise that would help resolve an issue or when there is a need for a uniform answer or an administrative standard from the agency. *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 427, 732 N.E.2d 488, 492 (2000); *People v. NL Industries*, 152 Ill. 2d 82, 95, 604 N.E.2d 349, 354-55 (1992). The doctrine applies only when a court has either original or concurrent jurisdiction over an issue or issues within a case. *Segers*, 191 Ill. 2d at 427-28. Where the doctrine is applied, the judicial process is suspended pending referral of the issues to the administrative body for its views. *NL Industries*, 152 Ill. 2d at 95-96. There is no fixed formula for applying the doctrine of primary jurisdiction; rather, in every case, the court must ask whether the reasons for the existence of the doctrine are present and whether its purposes will be aided by application in the particular litigation. *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 64 (1956); *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1111, 859 N.E.2d 1, 14 (2006).

9

¶ 17    In this case, plaintiffs have alleged violations of the Consumer Fraud Act based on Allstate's failure to disclose its use of "elasticity of demand" as a non-risk-related rating factor in its filings with the Department and its communications with customers regarding the renewal of auto policies. Plaintiffs allege that Allstate had engaged in certain business practices that are deceptive and unfair. The Code prohibits unfair methods of competition and unfair or deceptive practices. 215 ILCS 5/423 (West 2012). Specific unfair methods of competition and unfair or deceptive practices are defined in section 424 of the Code. 215 ILCS 5/424 (West 2012). The Director has authority to investigate and to determine whether an individual or a company has been engaged in any of the practices defined in section 424, and to issue a cease and desist order. 215 ILCS 5/424, 425, 427 (West 2012). Under section 429 of the Code, the Director also has authority to consider and make findings as to whether a company is engaging in an unfair or deceptive practice that is not defined in section 424, but the Director has no enforcement authority. 215 ILCS 5/429 (West 2012). If the Director issues a report charging a violation based on an unfair or deceptive practice that is not defined, and the practice is continuing in nature, the Director may, through the Attorney General, file a complaint in the circuit court. 215 ILCS 5/429(2) (West 2012). Section 432 of the unfair practice section of the Code provides: "The powers vested in the Director by this Article shall be additional to any other powers to enforce any penalties, fines or forfeitures authorized by law with respect to the methods, acts and practices hereby declared to be unfair or deceptive." 215 ILCS 5/432 (West 2012). Therefore, under this provision, the Director does not have primary or exclusive enforcement authority with respect to deceptive practices by insurance companies.

¶ 18    Based on the allegations in the complaint, the plaintiffs are challenging deceptive business practices that are not defined or enumerated in section 424 of the Code. The alleged

10

deceptive practices are not unique to the insurance industry. Allstate has not shown that the Director or the Department of Insurance has any specialized knowledge or technical expertise with regard to the deceptive practices alleged. The Director does not have primary or exclusive authority in the area of regulating deceptive practices by insurance companies. Moreover, the allegations of unfair and deceptive business practices and unjust enrichment come within the experience and conventional competence of the Illinois courts. Accordingly, we answer the second certified question in the negative.

¶ 19     In the dissenting opinion, our colleague agrees that the Director and the Department have no power to set insurance rates or preapprove filed rates, but concludes that "there is a comprehensive statutory scheme whereby the legislature has given the [Department] the power to disapprove rates based on unfair or deceptive acts or practices by those engaged in the business of insurance" (*infra* ¶ 28). Notably, the dissent finds persuasive the reasoning in *Schilke v. Wachovia Mortgage, FSB*, 705 F. Supp. 2d 932 (N.D. Ill. 2010) (*Schilke I*), *vacated*, 758 F. Supp. 2d 549 (N.D. Ill. 2010) (*Schilke II*), *aff'd on other grounds sub nom. Cohen v. American Security Insurance Co.*, 735 F.3d 601, 607-08 (7th Cir. 2013). In *Schilke I*, plaintiff's lender and mortgagor, Wachovia Mortgage, FSB, obtained and placed insurance on Schilke's property when her homeowner's insurance lapsed. The cost of the replacement coverage, obtained from American Security Insurance Company (ASI), was more than twice what plaintiff had paid for her own coverage and included a commission to Wachovia's insurance agent affiliate. Under the terms of the mortgage agreement, plaintiff was required to maintain insurance for the mortgaged property, and Wachovia was permitted to purchase replacement coverage to protect its property interest. *Schilke I*, 705 F. Supp. 2d at 935. Plaintiff filed a proposed class action and alleged Wachovia and ASI had engaged in deceptive conduct because the insurance premium plaintiff

11

was charged for the ASI policy included undisclosed fees and "kickbacks" to Wachovia. Plaintiff alleged violations of the Consumer Fraud Act, common law fraud, conversion, and unjust enrichment. *Schilke I*, 705 F. Supp. 2d at 936. The district court granted ASI's motion to dismiss. The court determined that plaintiff's damages claims against the insurer were barred by the filed rate doctrine, and that the claim for injunctive relief failed because it did not plausibly allege proximate cause. *Schilke I*, 705 F. Supp. 2d at 942-43. In concluding that the filed rate doctrine applied, the district court noted that Illinois law requires insurers to charge rates in accordance with the rates filed with the Department. The court further noted that Illinois courts have applied the filed rate doctrine in the context of insurance, citing *Anzinger* and *Horwitz. Schilke I*, 705 F. Supp. 2d at 942-43. Subsequently, the court vacated its judgment in *Schilke I* on procedural grounds to allow plaintiff leave to submit a proposed, amended complaint to correct deficiencies. See *Schilke II*, 758 F. Supp. 2d at 553.

¶ 20    In *Schilke II*, the district court concluded that the proposed amended claims against ASI were barred by the filed rate doctrine for the reasons stated in its previous judgment. *Schilke II*, 758 F. Supp. 2d at 558-59. On review, the United States Court of Appeals for the Seventh Circuit affirmed the judgment on the ground that plaintiff failed to plausibly state any viable claim for relief. See *Cohen*, 735 F.3d at 608. In its opinion, the Seventh Circuit questioned whether the filed rate doctrine applied to the facts of the case, and cast doubt on the district court's reasoning, noting that while the insurer was required to file its insurance rates with the Department, it was "not at all clear that the Department has the authority to approve or disapprove property-insurance rates." *Cohen*, 735 F.3d at 607-08. Like the Seventh Circuit, we have questioned whether the filed rate doctrine applies, given Illinois's unique open competition laws with respect to auto insurance regulation. Earlier in this decision, we considered the Act's legislative

12

history and scheme, and we concluded that the filed rate doctrine did not apply. Under Illinois's current legislative scheme, the Department is not vested with the authority to set, approve, or disapprove of auto insurance rates filed by an insurer. The dissent has not offered any additional analysis that would change our view, and the holding in *Schilke II* was certainly not dispositive, as suggested by the dissent. Therefore, we simply do not believe that the filed rate doctrine should be applied so expansively, and we respectfully disagree with the reasoning as proffered by our dissenting colleague.

¶ 21    Further, the dissent would also find that the Department has primary jurisdiction to determine whether the complained-of conduct constitutes an unfair trade practice, and would, therefore, answer the second certified question in the affirmative. We simply disagree with the dissent's interpretation of the current regulatory scheme governing auto insurance rates. As noted, Allstate failed to establish that the Director or the Department of Insurance have any specialized knowledge or technical expertise in regard to the deceptive practices alleged in the complaint. Additionally, the allegations of unfair and deceptive business practices and unjust enrichment come within the experience and conventional competence of the Illinois courts. Nothing within the statutory scheme suggests otherwise, and we do not believe it our function to do what the legislature has chosen not to act upon. For these reasons, we have answered the second question in the negative.

¶ 22    Finally, we pause briefly to address the scope of review in a Rule 308 appeal. As noted by the dissent, there are cases in which the interests of judicial economy and the need to reach an equitable result may lead a reviewing court to go beyond the certified question and consider the propriety of the order that gave rise to the appeal. However, in an interlocutory appeal under Rule 308, the scope of review is ordinarily limited to addressing the questions certified by the

13

trial court. See *Lewis v. NL Industries, Inc.*, 2013 IL App (1st) 122080, ¶ 5, 988 N.E.2d 197; *Hudkins v. Egan*, 364 Ill. App. 3d 587, 590, 847 N.E.2d 145, 148 (2006). Except in those cases where the interests of judicial economy and equity lie, this court simply answers the certified questions without considering the propriety of the trial court's ruling on the underlying order. *Hudkins*, 364 Ill. App. 3d at 590. In this case, we have observed our limited scope of review by answering the certified questions, and we do not believe it appropriate to reach further and consider the propriety of the circuit court's underlying order.

¶ 23                                    III. CONCLUSION

¶ 24    For the reasons stated, the certified questions have been answered in the negative.

¶ 25    Certified questions answered; cause remanded.

¶ 26    JUSTICE MOORE, dissenting:

¶ 27    I respectfully dissent from the opinion of my colleagues, which answers both certified questions in the negative. For the reasons that follow, I find the plaintiffs' claims are barred by the filed rate doctrine. Further, I find that the primary jurisdiction doctrine requires that the Department of Insurance (DOI) and its Director determine, in the first instance, whether the complained-of conduct by the defendant insurance companies constitutes an unfair or deceptive trade practice. Accordingly, I would answer both certified questions in the affirmative. In addition, in accordance with this court's power, in the interest of judicial economy, to reach the underlying order giving rise to the certified questions (see *Crawford County Oil, LLC v. Weger*, 2014 IL App (5th) 130382, ¶ 11, 15 N.E.3d 978), I would reverse the circuit court's order denying the defendants' motion to dismiss and remand with directions that the circuit court dismiss the plaintiffs' class action complaint as to the money damages claim and stay the

14

complaint for injunctive relief pending referral to the DOI as to the issue of whether the defendants' conduct constitutes a deceptive act or practice as it relates to the insurance industry.

¶ 28       Beginning with the first certified question on appeal regarding the applicability of the filed rate doctrine, I disagree with the conclusion reached by the majority that the DOI "has not been given explicit authority to approve or disapprove the rates charged, either prior or subsequent to the filing of the rates" (*supra* ¶ 9) and "[t]he Director has not been given any administrative authority to set, approve, or disapprove of those rates" (*supra* ¶ 15). Rather, I find the reasoning set forth by the U.S. District Court for the Northern District of Illinois regarding this issue to be persuasive. See *Schilke v. Wachovia Mortgage, FSB*, 705 F. Supp. 2d 932, 942-43 (N.D. Ill. 2010) (*Schilke I*), *vacated*, 758 F. Supp. 2d 549, 560-61 (N.D. Ill. 2010) (*Schilke II*). As the court in *Schilke I* and *Schilke II* explained, "the 'distinction between "the power to establish and fix rates and *** the power to disapprove the rate" ' is not relevant for purposes of the filed rate doctrine." *Schilke I*, 705 F. Supp. 2d at 943 (quoting *Horwitz v. Bankers Life & Casualty Co.*, 319 Ill. App. 3d 390, 407, 745 N.E.2d 591, 605 (2001), quoting *Anzinger v. Illinois State Medical Inter-Insurance Exchange*, 144 Ill. App. 3d 719, 723, 494 N.E.2d 655, 658 (1986)); see also *Schilke II*, 758 F. Supp. 2d at 561. While, under Illinois law, the Director and DOI do not have the power to set insurance rates or preapprove filed rates, there is a comprehensive statutory scheme whereby the legislature has given the DOI the power to disapprove rates based on unfair or deceptive acts or practices by those engaged in the business of insurance. *Schilke I*, 705 F. Supp. 2d at 943 (citing 215 ILCS 5/423-427, 429, 431 (West 2008)). Because the DOI has the power to disapprove insurance rates on the grounds that an insurance company utilizes an unfair or deceptive act or practice in setting such rates, I find that

15

the filed rate doctrine is applicable to the plaintiff's claims. Therefore, I would answer the first certified question in the affirmative.

¶ 29    Similarly, I would find that the DOI has primary jurisdiction to determine if the complained-of conduct constitutes an unfair or deceptive trade practice. In enacting article XXVI of the Insurance Code, entitled "Unfair Methods of Competition and Unfair and Deceptive Acts and Practices," the legislature made the following statement of purpose:

> "The purpose of this article is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the Act of Congress of March 9, 1945 (Public Law 15, 79th Congress),[1] by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." 215 ILCS 5/421 (West 2016).

¶ 30    Article XXVI not only defines specific unfair or deceptive acts or practices (*id.* § 424), it contains a detailed procedure to determine whether undefined acts or practices are unfair or deceptive (*id.* § 429). Article XXVI gives the Director power to examine and investigate such practices, provides for an administrative hearing as to such practices, provides for intervention by affected parties, and provides for judicial review as to any determination. *Id.* §§ 425, 426, 428, 430. In addition, the Director is authorized to issue cease and desist orders (*id.* § 427) and impose penalties for a violation of such orders (*id.* § 431). In the case of undefined deceptive acts or practices, the Director may employ the Attorney General to enjoin or restrain any such act or practice. *Id.* § 429(2). Thus, article XXVI plainly gives the DOI concurrent jurisdiction to determine what constitutes a deceptive act or practice in the context of the insurance industry.

---

[1]15 U.S.C § 1011 *et seq.* (2012).

16

¶ 31    In support of its conclusion that the primary jurisdiction doctrine is inapplicable, the majority repeatedly states that the DOI does not "have primary or exclusive authority in the area of regulating deceptive practices by insurance companies." See *supra* ¶¶ 17-18. While I assume, for the sake of argument, that this statement is correct, I respectfully disagree that this is the correct inquiry to be made when determining whether an exercise of the primary jurisdiction doctrine is appropriate. The doctrine of primary jurisdiction presumes that a court has jurisdiction over a matter, but provides that it should, in some instances, stay the judicial proceedings, pending referral of a controversy, or some portion of it, to an administrative agency having expertise in the area. *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 288, 644 N.E.2d 1163, 1165 (1994). The doctrine is " ' "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." ' " *Id.* (quoting *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 444, 493 N.E.2d 1045, 1052 (1986), quoting *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 63 (1956)). "Under this doctrine, a matter should be referred to an administrative agency when it has a specialized or technical expertise that would help resolve the controversy, *or when there is a need for uniform administrative standards.*" (Emphasis added.) *Id.* at 288-89 (citing *Kellerman*, 112 Ill. 2d at 445). I find that the regulatory scheme our legislature adopted regarding the determination of what constitutes a deceptive act or practice in the context of the insurance industry establishes both of these elements.

¶ 32    Contrary to the assertion of the majority, I find that section 432 of the Insurance Code supports, rather than defeats, a conclusion that the DOI should decide the issue of whether the defendants' conduct amounts to a deceptive act or practice under the doctrine of primary jurisdiction. See *supra* ¶ 17. That provision states the Director's powers under article XXVI of

17

the Insurance Code are additional to any other powers to enforce that are authorized by law "with respect to the methods, acts[,] and practices *hereby declared to be unfair or deceptive*." (Emphasis added.) 215 ILCS 5/432 (West 2016). In my view, this is another declaration, made by our legislature, that it is the DOI's province to determine whether "methods, acts, or practices" in the insurance industry are unfair or deceptive. For these reasons, I would answer the second certified question in the affirmative.

¶ 33    Having answered both of the certified questions in the affirmative, I would, in the interest of judicial economy, reach the order underlying the certified questions, which is the circuit court's order denying the defendants' motion to dismiss. See *Weger*, 2014 IL App (5th) 130382, ¶ 11. After so doing, I would reverse the circuit court's order and remand this cause with directions that the circuit court dismiss the plaintiffs' class action complaint, insofar as it alleges a cause of action for money damages, and stay the action requesting injunctive relief pending referral of the issue of whether the defendants' conduct amounts to an unfair or deceptive practice to the DOI.

¶ 34    For all of the foregoing reasons, I respectfully dissent.

2019 IL App (5th) 170296

NO. 5-17-0296

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| JEFFREY A. CORBIN, MARGARET A. CORBIN, and ANNA TRYFONAS, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 16-L-880 |
| THE ALLSTATE CORPORATION, ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY AND CASUALTY COMPANY, and ALLSTATE FIRE AND CASUALTY COMPANY, | ) ) ) ) ) ) | Honorable |
| Defendants-Appellants. | ) ) | Barbara L. Crowder, Judge, presiding. |

_____

**Opinion Filed:**     January 29, 2019

_____

**Justices:**     Honorable Judy L. Cates, J.

Honorable Melissa A. Chapman, J., concurred
Honorable James R. Moore, J., dissented

_____

**Attorneys for Appellants**     Troy A. Bozarth, Kathryn Modeer, HeplerBroom LLC, 130 North Main Street, Edwardsville, IL 62025-0510; Michael P. O'Day (*pro hac vice*), Kathleen A. Birrane (*pro hac vice*), DLA Piper LLP (US), The Marbury Building, 6225 Smith Avenue, Baltimore, MD 21209-3600

_____

**Attorneys for Appellees**     Jay Angoff (*pro hac vice*), Cyrus Mehri (*pro hac vice*), Steven Skalet (*pro hac vice*), Christine Monahan (*pro hac vice*), Mehri & Skalet PLLC, 1250 Connecticut Ave. NW, Suite 300, Washington, D.C. 20036; Thomas E. Kennedy III, Sarah Jane Hunt, Law Offices of Thomas E. Kennedy, III, L.C., 906 Olive Street, Suite 200, St. Louis, MO 63101; Andrea R. Gold, Tycko & Zavareei LLP, 1828 L Street NW, Suite 1000, Washington, D.C. 20036; Peter Kahana (*pro hac vice*), Jeff Osterwise (*pro hac vice*), Berger & Montague, P.C., 1622 Locust Street, Philadelphia, PA 19103

_____